**JAMES MOORHEAD, Plaintiff**

v.

**HENRY MILLIN and THE DAILY NEWS PUBLISHING COMPANY, INC., Defendants**

Civil No. 81-137

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 11, 1982

---

LEONARD BERNARD FRANCIS, JR., ESQ., St. Thomas, V.I., *for plaintiff*

JOHN G. SHORT, ESQ. (DUDLEY, DUDLEY & TOPPER), St. Thomas, V.I., *for defendant Daily News Publishing Co., Inc.*

FREDERICK G. WATTS, ESQ. (LOUD, WATTS & MURNAN), St. Thomas, V.I., *for defendant Millin*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

Presently before the Court are the motions for summary judgment of defendants Henry Millin and The Daily News Publishing Company, Inc. (hereinafter, "Daily News"), Fed. R. Civ. P. 56. Both motions will be granted as there is no genuine issue as to any material fact concerning a dispositive issue in this case.

The relevant facts are as follows. On April 7, 1979, the Daily News published an article which recounted the substance of an April 3, 1979, letter from defendant Henry Millin, as Lieutenant Governor, to David Staples of West Indies Transport Company (hereinafter "W.I.T.CO."). The aforesaid letter was critical of plaintiff Moorhead's acts in his capacity as Director of the Division of Utilities and Sanitation of the Virgin Islands Department of Public Works. Specifically, it criticized plaintiff's handling of the barging of water to the Virgin Islands. At the time the letter was sent, W.I.T.CO. was a company which was providing a water barging service to the Government of the Virgin Islands.

The news article accurately reported various quotations from the aforesaid letter, including the statement that Lieutenant Governor Millin had recommended the "prompt removal and replacement" of plaintiff as Director, that he was "confident" that Governor Juan

158

Luis would take "appropriate action in the public interest," and that plaintiff's administering of his official tasks was characterized by "vindictiveness" and "shabby handling of his important responsibility."

The news article noted that the letter was not released by defendant Millin or W.I.T.CO. Rather, it stated that portions of the letter were disclosed to the Daily News by "reliable sources."

The news article also discussed complaints made by W.I.T.CO. officials against the plaintiff. It stated that W.I.T.CO. had charged that the plaintiff was "deliberately obstructing their efforts to barge more water to St. Thomas" and that the plaintiff "was holding up $265,000 in overdue payments to the company." The article further noted that subsequent to Millin's letter, W.I.T.CO. officials, the Governor and the plaintiff met to "go over the areas in which the company believes Moorhead is said to be subverting their efforts."

In his complaint, plaintiff alleges that defendant Millin's April 3, 1979, letter contained false and defamatory statements regarding his job performance. Plaintiff further contends that the aforementioned newspaper article was "false in its innuendo," and that the printing, publication, and circulation by the Daily News of the article was grossly negligent, in that it was done in reckless disregard of the truth or falsity of its contents. Plaintiff asks that he be awarded $1,000,000 in compensatory damages for the alleged injuries he has suffered as a result of the defendants' defamation, and $1,000,000 in punitive damages.

Turning to the motion for summary judgment of defendant Millin, it is his contention that this action should be dismissed because even if the statements made in the April 3, 1979, letter were false, the defendant is entitled to an absolute privilege which protects him from liability. We agree.

■ Absolute privileges to defamation actions are based on policy decisions that certain persons, because of their official position or status, should be free from liability for speech used in connection with their position or status. The particular reasons for the recognition of the "executive privilege" have been stated to be as follows:

It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and

the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

Barr v. Matteo, 360 U.S. 564, 571 (1959).

■ The conditions of the executive privilege are set forth in the Restatement (Second) of Torts § 591 (1977).[1] That section provides the following:

> *591. Executive and Administrative Officers*
>
> An absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exist for
>
> (a) any executive or administrative officer of the United States; or
>
> (b) a governor or other superior executive officer of a state.

In accordance with § 591, defendant Millin can invoke the executive privilege in this action because he is a "superior executive officer of a state," and the April 3, 1979, letter at issue was written in the "performance of his official duties."

■ Firstly, as a matter of law, the position of Lieutenant Governor of the Virgin Islands is that of a "superior executive officer of a state," within the meaning of § 591. The position of Lieutenant Governor is second in importance in the executive branch of government of the territory only to the position of Governor. The Lieutenant Governor is elected by majority vote jointly with the Governor. See § 11 of the Revised Organic Act of 1954, as amended. The Lieutenant Governor is authorized to perform any executive duties in the territory which are assigned to him by the Governor or Legislature. See § 11 of the Revised Organic Act of 1954, as amended; 3 V.I.C. § 31(b). Furthermore, in case of a permanent vacancy in the office of Governor, the Lieutenant Governor becomes the Governor until the next regular election for Governor. See § 14(b) of the Revised Organic Act of 1954, as amended. Finally, in case of the temporary absence from the Virgin Islands or temporary disability of the Governor, the Lieutenant Governor assumes all the powers of the Governor. See § 14(a) of the Revised Organic Act of 1954, as amended.

■ The second prong of the requirement for the invocation of executive privilege has also been met. The test for determining whether an executive made an alleged defamatory communication

---

[1] The restatements of the law approved by the American Law Institute are the "rules of decision" in the courts of the Virgin Islands absent contrary local laws. 1 V.I.C. § 4.

in the performance of his official duties is broad. The communication need not be "one that the officer in question is required to make, as when the head of a department is required by law to file an annual report concerning its affairs. It is enough that the publication is one that the officer is authorized to make in his capacity as an officer." Restatement (Second) of Torts § 591 comment f (1977).

■ All the facts on the record indicate that defendant Millin authored the April 3, 1979, letter in the performance of his official duties. The letter was drafted on the stationery of the Office of the Lieutenant Governor and signed by defendant Millin as "Lieutenant Governor." In his January 7, 1982, affidavit in this action, defendant Millin stated that he wrote the alleged defamatory letter in response to complaints made by W.I.T.CO. officials concerning difficulties they were encountering in offloading water into the public water system. Defendant noted that the W.I.T.CO. complaints focused on the plaintiff's alleged malperformance of his official duties. Defendant further stated that his authority as Lieutenant Governor to respond to W.I.T.CO. complaints regarding the workings of the public water system was dual. First, he noted that he had the responsibility to try to resolve problems with the operation of the public water system because the Governor has delegated him the job of "general troubleshooter" in all areas of Virgin Islands Government. Second, he stated that on April 3, 1979, he was acting chief executive because the Governor was absent from the territory. See § 14(a) of the Revised Organic Act of 1954, as amended; discussion in text, supra at p. 4.

Plaintiff's opposition to the foregoing factual allegations of the defendant is insufficient as a matter of law. In his February 26, 1982, affidavit, plaintiff stated that the Lieutenant Governor was not "acting within the scope of his office." Such a conclusive allegation does not create a genuine issue of fact. Rather, specific facts must be set forth. See Fed. R. Civ. P. 56(e). Plaintiff also contradicts the defendant's allegations in an unsworn "Memorandum of Law," submitted by his attorney. That also does not suffice. See, generally, Ratner v. Young, 465 F.Supp. 386, 389–90 (D.V.I. 1979) (oral argument does not contradict facts otherwise established). Therefore, as there is an absence of specific facts contradicting those facts set forth by defendant Millin, the facts are established to be as set forth in defendant's January 7, 1982, affidavit. See Fed. R. Civ. P. 56(e); Ratner, supra, at 389–90.

■ In summary, defendant Millin is entitled to claim executive privilege. Such privilege is absolute and bars this defamation action

irrespective of defendant Millin's "purpose in making the publication." Restatement (Second) of Torts § 591 comment d. (1977). Therefore, summary judgment will be entered in favor of the defendant-Lieutenant Governor.

Next we will discuss the motion for summary judgment of defendant Daily News. This defendant argues that plaintiff is a "public official", and that the alleged defamatory statements made about the plaintiff in the April 7, 1979, Daily News article concerned plaintiff's conduct as a "public official." Thus, defendant Daily News concludes that the plaintiff cannot recover for defamation on the facts alleged, because the plaintiff has set forth no evidence which shows that the Daily News was aware that the article at issue was false, or that the Daily News acted recklessly in publishing the article. Once more, we agree.

 The First Amendment of the United States Constitution guarantees freedom of speech and freedom of the press.[2] The exercise of First Amendment freedoms may, however, interfere with the rights of others to be free from defamation, a right recognized by a common law action in tort. The United States Supreme Court has found that when balancing such competing interests the First Amendment rights should be given added weight, in order "to assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974). Therefore, the Supreme Court has found it appropriate to limit the opportunity for public officials to recover for alleged defamation, due to the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times v. Sullivan, 376 U.S. 254, 270 (1964). In New York Times, supra, at 279–80, the Court set out the standard, for defamation actions brought by officials, to be as follows:

> The Constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehold relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

[2] The First Amendment to the United States Constitution is applicable in the Virgin Islands by virtue of § 3 of the Revised Organic Act of 1954, as amended.

■■■ We are of the opinion that the New York Times malice rule is applicable in this case because the plaintiff is a public official. In libel actions the "'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Rosenblatt v. Baer, 383 U.S. 75, 85 (1966). If the public has an "independent interest" in the qualifications and performance of a person who is in governmental service, that person is a public official. Rosenblatt, supra, at 86.

The job of Director of the Division of Utilities and Sanitation of the Virgin Islands Department of Public Works is an appointed government position. The duties of that office include "complete responsibility and authority in the following areas: potable water distribution, solid waste collection and disposal, sanitary sewage, salt water supply, cemetery services, and utility systems services," paragraph 5 of the instant complaint. We find that the aforesaid responsibilities are "substantial" and give plaintiff control over an important area of local government. The plaintiff's performance of his assigned tasks is necessarily of public interest because it may affect the delivery of basic services important to the health and welfare of the people of the territory. Therefore, plaintiff is a "public official" within the meaning of Rosenblatt.

■■■ The alleged defamatory statements here challenged were made about plaintiff's job performance in an area of especial public concern—the distribution of the precious commodity of water in these dry islands. Thus, plaintiff cannot recover for the alleged defamatory statements concerning his work-related conduct, unless he proves that the Daily News acted with "malice." See Restatement (Second) of Torts § 580A comment e (plaintiff has burden of proving "malice"). This means that plaintiff must show that the Daily News knowingly and deliberately published lies about him in the April 7, 1979, article, or that the Daily News recklessly published the article because it "in fact entertained serious doubts as to the truth of [its] publication." Pierce v. Capital Cities Communications, Inc., 576 F.2d 495, 508 (3rd Cir. 1978). In sum, the evidence must be such as to support "a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." Curtis Publishing Co. v. Butts, 388 U.S. 130, 155 (1967).

The evidence before the Court indicates that the Daily News acted reasonably when it published the alleged defamatory article. The

April 21, 1981, affidavit of Penny Feuerzeig, the reporter who wrote the article, states that prior to publication, she discussed the complaints against the plaintiff, which were printed in the article, with David Staples and W. James Oelsner of W.I.T.CO. David Staples was the recipient of the April 3, 1979, letter authored by defendant Millin. Mrs. Feuerzeig further notes that she read the aforesaid letter. She states that she also contacted the plaintiff prior to writing the story, and after explaining the substance of the letter of defendant Millin, the plaintiff said, "I have no comments to make". The reporter also noted that she tried to discuss the story with Governor Luis, but that he was unavailable.

 The plaintiff has not provided the Court with specific facts which contradict the affidavit of Penny Feuerzeig. Therefore, as the plaintiff's allegations of gross negligence of defendant Daily News in the complaint are insufficient to raise a genuine issue of fact, at this juncture the facts are deemed to be established as set forth by defendant Daily News. See Fed. R. Civ. P. 56(e). Ratner, supra, at 389–90. Thus, summary judgment in favor of defendant Daily News is appropriate.

## ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of defendant Henry Millin for summary judgment be, and the same is hereby, GRANTED;

IT IS FURTHER ORDERED that the motion of defendant The Daily News Publishing Co., Inc., for summary judgment be, and the same is hereby, GRANTED.