**LAVERNE MILLS-WILLIAMS, Appellant/Plaintiff**

**v.**

**GOVERNOR KENNETH E. MAPP, RANDOLPH KNIGHT, CLAUDE WALKER, and THE OFFICE OF THE GOVERNOR, Appellees/Defendants**

S. Ct. Civil No. 2016-0054

Supreme Court of the Virgin Islands

July 14, 2017

RHEA R. LAWRENCE, ESQ., LEE J. ROHN, ESQ., Law Offices of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorneys for Appellant.*

CAROL L. THOMAS-JACOBS, ESQ., DIONNE G. SINCLAIR, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellees.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HOLLAR, *Designated Justice.*[1]

## OPINION OF THE COURT

(July 14, 2017)

HODGE, *Chief Justice*. Appellant Laverne Mills-Williams appeals from the Superior Court's August 31, 2016 opinion and order, which dismissed all of her claims against Governor Kenneth E. Mapp, Randolph Knight, Attorney General Claude Walker, Esq., and the Office of the Governor, and denied her motion for leave to amend her complaint. For the reasons that follow, we affirm in part and reverse in part both the grant of the motion to dismiss and the denial of the motion for leave to amend.

## I. BACKGROUND & PROCEDURAL POSTURE

After Governor Mapp assumed office in January 2015, he hired Randolph Knight as his Chief of Staff and Emile Henderson, Esq., as his Chief Counsel. Shortly after the election, Henderson recruited Mills-Williams to join his staff as a Deputy Attorney. Purportedly, Henderson told Mills-Williams that the Mapp administration "was going to be unlike other administrations and that it was going to be ethical, do all actions by the book and be a reputable administration." Mills-Williams accepted the job offer, and began her employment in the Office of the Governor, where Henderson served as her supervisor.

At some point, the *St. Croix Avis* newspaper submitted a request to the Government of the Virgin Islands under the territory's Freedom of Information Act, title 3, sections 881-884 of the Virgin Islands Code, for information related to Knight, Henderson, and Governor Mapp. The matter was assigned to Mills-Williams, who determined that Governor Mapp, Knight, and Henderson must be "walled off" from the request because it concerned them. (J.A. 181.) However, after learning that Governor Mapp wished to review the documents before they were sent to the *St. Croix Avis*, Mills-Williams told her supervisor, Henderson, that doing so would be unlawful. Henderson indicated that he would advise the Governor.

---

[1] Associate Justice Maria M. Cabret is recused from this matter; the Honorable Brenda J. Hollar, a retired judge of the Superior Court of the Virgin Islands, sits in her place by designation pursuant to title 4, section 24 of the Virgin Islands Code.

579

Mills-Williams provided the documents to the *St. Croix Avis* on September 14, 2015. Afterward, Henderson informed her that Governor Mapp and Knight were upset that the documents were transmitted without providing them with an opportunity to review and redact them. It was also made clear to Mills-Williams that she was to stonewall any further Freedom of Information Act requests and not produce any more documents. (J.A. 182.) On September 30, 2015, Henderson advised Mills-Williams that Governor Mapp had decided to transfer her from the Office of the Governor to the Virgin Islands Department of Justice, and that she should report to work there beginning on October 5, 2015. Mills-Williams received an official letter of termination from the Office of the Governor on October 7, 2015. After becoming informed that she was being transferred to the Virgin Islands Department of Justice, Mills-Williams was directed to report to the Department of Property and Procurement, Office of the Solicitor General, and the Department of Labor. No Notice of Personnel Action ("NOPA") was ever received or signed reflecting any of the assignments to the various executive agencies nor was Mills-Williams ever paid for work performed since October 2, 2015. (J.A. 183.)

Mills-Williams filed suit against Governor Mapp, Knight, Henderson, and the Office of the Governor in the Superior Court on October 28, 2015, in which she asserted causes of action for misrepresentation, the Virgin Islands Whistleblower's Protection Act, and tortious interference with employment contracts. On the same day, Mills-Williams filed a first amended complaint that removed Henderson as a defendant. On October 29, 2015, Mills-Williams received a letter signed by Attorney General Walker advising her that she was being placed on leave with pay, but that there was no source of funds to pay her. On November 4, 2015, Mills-Williams filed a second amended complaint that added Claude Walker, Esq. as a defendant, alleging that he retaliated against her in violation of the Whistleblower's Protection Act by changing her status in such a manner.

On November 13, 2015, Governor Mapp published a press release stating that Mills-Williams associated with a convicted criminal — her attorney — and as being untrustworthy with confidential information. Around the same time, Governor Mapp also appeared on local radio talk shows and repeated the same information. Governor Mapp also terminated Mills-Williams's employment with the Department of Justice.

On November 23, 2015, Governor Mapp, Chief of Staff Knight, Attorney General Walker, and the Office of the Governor moved to dismiss Mills-Williams's second amended complaint dated October 29, 2015 and filed November 4, 2015.[2] In addition to opposing the motion to dismiss, Mills-Williams moved to file a third amended complaint — over the objection of the defendants[3] — to re-name Henderson as a defendant, clarify that Governor Mapp, Attorney General Walker, and Henderson were being sued in both their individual and official capacities, and to add a new cause of action for defamation.

In an August 31, 2016 opinion and order, the Superior Court granted the defendants' motion to dismiss, and dismissed all of Mills-Williams's claims without prejudice. Moreover, the Superior Court denied Mills-Williams's motion for leave to amend her second amended complaint, on grounds that further amendment would be futile. Mills-Williams timely filed her notice of appeal with this Court on September 29, 2016.

## II. ANALYSIS

### A. Jurisdiction

■ The Revised Organic Act of 1954 confers jurisdiction on this Court over "all appeals from the decisions of the courts of the Virgin Islands established by local law." 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). The Superior Court's August 31, 2016 opinion and order fully adjudicated all issues in this matter, which would ordinarily vest this Court with jurisdiction. *See Garcia v. Garcia*, 59 V.I. 758, 766 (V.I. 2013); *Madir v. Daniel*, 53 V.I. 623, 629-30 (V.I. 2010). Although not raised by any of the parties, we recognize that the Superior Court's August 31, 2016 opinion

---

[2] Although Knight and Walker filed a motion to dismiss in their official capacities through the Department of Justice, the caption of the second amended complaint referenced them in their individual capacities. (J.A. 32.)

[3] At this point of the proceedings, Mills-Williams could not file a third amended complaint as of right, but was required to seek permission of the Superior Court. *See* SUPER. CT. R. 8 ("The court may amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at the trial."); *Caribbean Healthways v. James*, 55 V.I. 691, 699 (V.I. 2011); *Harvey v. Christopher*, 55 V.I. 565, 577 (V.I. 2011).

and order stated that all of Mills-Williams's claims were dismissed without prejudice. A dismissal without prejudice in this context is highly unusual, in that a dismissal for failure to state a claim is typically with prejudice — particularly when, as here, the Superior Court has also held that further amendment would be futile. *See, e.g., Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile."); *accord, Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566, 580 n.4 (V.I. 2012).

Importantly, several courts have held that "a dismissal without prejudice generally is a non-final order and is not appealable," since a plaintiff whose complaint is dismissed without prejudice may attempt to cure the defect that led to the dismissal — and thus avoid the need for an appeal — by moving to amend the complaint or filing a new complaint as part of a new case. *Kenny v. United States*, 373 Fed. Appx. 259, 259 (3d Cir. 2010); *see also Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008) ("a dismissal without prejudice is not a final order for purposes of appellate jurisdiction."). Yet even these courts have established that a dismissal without prejudice is immediately appealable if the plaintiff cannot cure the deficiency, or if the plaintiff chooses to forego further amendment and stand by the complaint as last filed. *See Ennenga v. Starns*, 677 F.3d 766, 772 (7th Cir. 2012); *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir. 1976); *Hinote v. Ford Motor Co.*, 958 So. 2d 1009, 1010 (Fla. Dist. Ct. App. 2007). In other words, the plaintiff cannot waste appellate judicial resources and "have a second bite at the apple" by refiling if unsuccessful on appeal.

■ Significantly, although dismissing the case without prejudice, the Superior Court held that any further amendments to Mills-Williams's complaint would be futile, which would permit the matters to be appealed as of right. *Corliss v. O'Brien*, 200 Fed. Appx. 80, 82 n.1 (3d Cir. 2006); *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 266 (Mo. 2014) (en banc). Ergo, we agree with the courts that have held — in the absence of any evidence to the contrary — that we can infer from the filing of a notice of appeal that the plaintiff has elected to forego any further attempt at amendment in favor of an immediate appeal. *Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir. 2009). Such treatment would place the failure to file a motion to amend following a dismissal without prejudice on par with the failure to file a motion to set aside the judgment or other

post-judgment motion following the grant of summary judgment or a trial verdict. *See Harrell v. State*, 197 So. 2d 505, 506 (Fla. 1967) (filing of a notice of appeal vests jurisdiction with the appellate court and constitutes a waiver of other post-trial remedies in the trial court). Accordingly, we invoke jurisdiction over this appeal.

## B. Standard of Review

This Court applies plenary review to the Superior Court's application of law, while the trial court's findings of fact are reviewed for clear error. *Boynes v. Transportation Servs. of St. John*, 60 V.I. 453, 458 (V.I. 2014) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

■ Ordinarily, "[t]o the extent its decision is not based on legal conclusions or factual findings, this Court reviews the Superior Court's denial of a motion for leave to amend a complaint for abuse of discretion." *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 264 (V.I. 2012). However, in this case, the Superior Court stated in its August 31, 2016 opinion that the "[d]efendants opposed Mills-Williams's proposed amendments on grounds of futility, i.e. that the proposed amendments would neither survive a motion to dismiss . . . nor cure the deficiencies identified in the Second Amended Complaint that [d]efendants identified in their Motion to Dismiss," and that "[t]he standard for assessing a motion to amend challenged on futility grounds matches the standard for a motion to dismiss." (J.A. 9.) Thus, the Superior Court announced that it would "consider both the motion to dismiss and the motion to amend simultaneously," and in effect treated the defendants' opposition to the motion to amend the complaint as if it were a motion to dismiss. (J.A. 10.) Consequently, since the Superior Court effectively converted the defendants' opposition to Mills-Williams's motion to amend her complaint into a motion to dismiss the proposed amended complaint, we exercise plenary review with respect to the causes of action asserted in the proposed amended complaint. *Pichierri v. Crowley*, 59 V.I. 973, 977 (V.I. 2013).

## C. Legal Standard for Motion to Dismiss

In her appellate brief, Mills-Williams maintains that the Superior Court committed error when it applied the heightened pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d

583

929 (2007) to her complaint. In that case, the Supreme Court of the United States "reinterpreted Rule 8 [of the Federal Rules of Civil Procedure] to require a complaint [filed in federal court] to set forth a plausible claim for relief, thus allowing courts to dismiss . . . complaints that fail to meet that standard." *Joseph v. Bureau of Corr.*, 54 V.I. 644, 649 (V.I. 2011). According to Mills-Williams, the *Twombly* decision has no applicability to proceedings in the Superior Court because Federal Rule of Civil Procedure 8 is applicable to Virgin Islands courts only through Superior Court Rule 7, which provides that "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure." SUPER. CT. R. 7. Mills-Williams emphasizes that this Court, in its recent decision in *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 578-81 (V.I. 2015), strongly suggested that Superior Court Rule 7 is inconsistent with the Revised Organic Act of 1954, in that section 21(c) of the Revised Organic Act vests the Virgin Islands Judiciary with the authority to promulgate court rules while Superior Court Rule 7 delegates that authority to other entities that are not even part of the Virgin Islands Government.

■ Mills-Williams is correct that the Superior Court's reliance on *Twombly* and application of the heightened pleading standard predicated solely on the United States Supreme Court's interpretation of Federal Rule of Civil Procedure 8 would be highly problematic — and arguably improper — if premised solely on application of Superior Court Rule 7.[4] But this Court has previously held that its own precedents, including those establishing procedural rules through its common-law adjudicative authority, must be followed by the Superior Court, even if those precedents conflict with the rules of the Superior Court, including Superior Court Rule 7. *Gerace v. Bentley*, 65 V.I. 289, 304-05 (V.I. 2016); *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014). Importantly, this Court

---

[4] At the time Mills-Williams filed her complaint, Superior Court Rule 7 provided:

The practice and procedure in the Territorial Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

Former SUPER. CT. R. 7. As we explain below, Rule 7 was amended on April 7, 2017, to eliminate the references to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Rules of the District Court.

has expressly held, in both its oldest and newest decisions, that the *Twombly* standard does apply to proceedings in the Superior Court, at least until this Court determines otherwise. *See, e.g., Fleming v. Cruz,* 62 V.I. 702, 710 (V.I. 2015); *Brady v. Cintron,* 55 V.I. 802, 823 (V.I. 2011); *Robles v. HOVENSA, L.L.C.,* 49 V.I. 491, 500 (V.I. 2008).

 We recognize, of course, that this Court *has* in fact determined otherwise, in that effective March 31, 2017, this Court adopted the Virgin Islands Rules of Civil Procedure, which supersede all previous civil procedure rules applicable to the Superior Court, including the Federal Rules of Civil Procedure that had been applicable through former Superior Court Rule 7.[5] Significantly, Virgin Islands Rule of Civil Procedure 8 expressly states that the Virgin Islands "is a notice pleading jurisdiction," V.I. R. CIV. P. 8(a), and the Reporter's Note eliminates any doubt that this language is calculated to "apply[ ] an approach that *declines* to enter dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief." V.I. R. CIV. P. 8 Reporter's Note (emphasis added); *see also Brathwaite v. H.D.V.I. Holding Co.,* 2017 V.I. LEXIS 76, at *3 (V.I. Super. Ct. May 24, 2017) (acknowledging that Virgin Islands Civil Procedure Rule 8(a)(2) eliminates the plausibility standard and instead will permit a complaint so long as it "adequately alleges facts that put an accused party on notice of claims brought against it"). Therefore, going forward, it is clear that the adoption of Rule 8 of the Virgin Islands Rules of Civil Procedure supersedes our prior precedents which imposed the *Twombly* plausibility standard by virtue of the now-amended Superior Court Rule 7, and restores the notice pleading regime that had previously been in effect.[6] *See Estate of Knoster v. Ford Motor Co.,* 200 Fed. Appx. 106, 111 n.3 (3d

---

[5] In an April 7, 2017 order, this Court granted the request of the Superior Court to amend Superior Court Rule 7 to read as follows:

> The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court, the Virgin Islands Rules of Civil Procedure, the Virgin Islands Rules of Evidence, and any other rules promulgated by the Supreme Court of the Virgin Islands. In criminal cases, the non-substantive provisions of the Federal Rules of Criminal Procedure shall apply to the extent not inconsistent with Virgin Islands law, including the Rules of the Superior Court, rules promulgated by the Supreme Court, and any applicable Virgin Islands statutes and decisions of the Supreme Court.

[6] Notwithstanding the clear language of Virgin Islands Rule of Civil Procedure Rule 8(a)(2) and its accompanying Reporter's Note, we recognize that the Superior Court has nevertheless concluded that the plausibility standard survives the adoption of the Virgin Islands Rules of

Cir. 2006) (holding that the adoption of a new court rule "plainly supersedes" any cases to the contrary that applied the former rule).

■ Nevertheless, that the plausibility standard has been abolished in cases going forward does not change the fact that the Superior Court entered its dismissal order on August 31, 2016, when the old pleading rules were still in effect. Importantly, while the Virgin Islands Rules of Civil Procedure permit their application to pending cases in the Superior Court if doing so would not be infeasible or work an injustice, see V.I. R. CIV. P. 1-1(c), the instant case is no longer pending in the Superior Court, in that all of Mills-Williams's claims were dismissed almost a year before the Virgin Islands Rules of Civil Procedure went into effect. Under these circumstances, we must, in accordance with our prior precedents, apply the procedural rules as they existed at the time the matter was pending in the Superior Court. See Webster v. FirstBank P.R., 66 V.I. 514, 519 n.3 (V.I. 2017)

## D. Dismissal and Denial of Leave to Amend

■ Mills-Williams maintains that the Superior Court erred when it dismissed all the claims she asserted in her November 4, 2015 second amended complaint[7] and denied her leave to file a third amended complaint to change the factual basis for her Whistleblowers Protection

---

Civil Procedure because "[p]rior to the promulgation of the Virgin Islands Rules of Civil Procedure, the Supreme Court of the Virgin Islands applied FED. R. CIV. P. 12(b)(6) when considering motions to dismiss for failure to state a claim upon which relief can be granted." *Advanced Surgical Partners v. Cintron*, Super. Ct. Civ. No. 351/2015 (STX), 2017 V.I. LEXIS 63, at *7 n.23 (V.I. Super. Ct. Apr. 5, 2017); *see also Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, Super. Ct. Civ. No. 77/2017 (STT), 2017 V.I. LEXIS 91, at *3 (V.I. Super. Ct. June 21, 2017). However, "this Court does not abandon its collective knowledge . . . when it exercises its rulemaking authority, and surely it would not knowingly promulgate any rule it regarded as [invalid]." *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 249-50 (Tex. 1994). Because this Court was certainly aware of its prior precedents applying the plausibility standard, yet nevertheless chose to adopt a rule of civil procedure that expressly and unambiguously eliminated the plausibility standard, any precedents of this Court construing the former rule must prospectively yield to the plain language of the new rule to the extent the new rule differs from the old rule.

[7] In her November 4, 2015 second amended complaint, Mills-Williams also asserted a cause of action for tortious interference with employment against Governor Mapp, Knight, and Attorney General Walker. The Superior Court, however, determined that she failed to state a claim for tortious interference because her complaint made no allegation that those defen-

586

Act cause of action, to assert a new cause of action for defamation, and to re-instate Henderson as a defendant. We address each claim in turn.

### 1. *Misrepresentation*

In her November 4, 2015 second amended complaint, Mills-Williams asserted that "[t]he Defendants' other than Walker engaged in misrepresentation to [her]," that "[she] reasonably relied on these misrepresentations," and that "[s]he suffered injuries as alleged herein." (J.A. 177.) In her Superior Court filings, as well as in her appellate brief, Mills-Williams maintains that the purported misrepresentation was Henderson's statement to her that the Mapp administration "was going to be unlike other administrations and that it was going to be ethical, do all actions by the book and be a reputable administration." In its August 31, 2016 opinion, the Superior Court noted that Mills-Williams failed to specify whether she was asserting a cause of action for fraudulent misrepresentation or negligent misrepresentation, but determined that she failed to state a claim under either cause of action because "Henderson's alleged statements are pure puffery," (J.A. 13), and, in any case, she failed to "include any factual allegations showing that her reliance on Henderson's statements caused pecuniary loss." (J.A. 14.)

■■ ■ We agree with the Superior Court. While the elements of fraudulent misrepresentation and negligent misrepresentation differ, to state a claim for either cause of action, a plaintiff must — in addition to all the other elements of the cause of action — allege that a fact was misrepresented, and that the plaintiff relied on that misrepresentation to her detriment. *See Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013) (negligent misrepresentation); *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 471 (V.I. 2013) (fraudulent misrepresentation). It is well-established that "puffery cannot be the basis of any misrepresentation claim," for

---

dants interfered with a contract she had entered with a third party; rather, the Superior Court observed that "Mills-Williams has pleaded facts that come closer to establishing a plain vanilla breach of contract claim." (J.A. 25.) While Mills-Williams maintains in her appellate brief that the Superior Court erred when it dismissed all of the causes of action in her complaint, her brief contains no legal argument with respect to how the Superior Court erred in dismissing the tortious interference claim. Consequently, the issue has been waived. V.I. R. APP. P. 22(m) ("Issues that were . . . raised or objected to but not briefed, or . . . only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

"whether the misrepresentation was made negligently or intentionally, a reasonable person would not rely on it." *Alpine Bank v. Hubbell*, 550 F.3d 1274, 1285 (10th Cir. 2008); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) ("Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product. As such, it is not actionable."); *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (statement constitutes non-actionable puffery if they are "general assertions of superiority" instead of "factual misrepresentations"); *McDonald v. Davis*, 51 V.I. 573, 587 (D.V.I. 2009) ("To the extent [the plaintiff] predicates his misrepresentation and fraud claims on [the defendant's] statement that The Daily News is 'the best small newspaper in America,' such a statement is incontestably nonactionable puffery."). And while Mills-Williams maintains in her appellate brief that "[a] reasonable jury could conclude that [Henderson's] representation was material and not 'puffery,' " it is equally well-established that the determination of whether a statement constitutes non-actionable puffery is a question of law that a court may properly adjudicate on a motion to dismiss without submission to a jury. *See, e.g., In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) ("Many of the statements in plaintiff's complaint are, as a matter of law, nothing more than puffery."); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("The determination of whether an alleged misrepresentation is a statement of fact or is instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion.") (internal quotation marks omitted); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016) ("Whether a defendant's statement is puffery or a representation of fact is a question of law that may properly be decided on a motion to dismiss.") (citing *Cook*, 911 F.2d at 245).

██ Here, Henderson's statements that the Mapp administration "was going to be unlike other administrations," would be "ethical," and "do all actions by the book" are unquestionably "opinions representing subjective viewpoints that cannot be proved false." *Simpson v. Andrew L. Capdeville, P.C.*, 64 V.I. 477, 488 (V.I. 2016); *see also Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

Consequently, the Superior Court correctly held that Mills-Williams failed to allege a misrepresentation of fact.

Likewise, the Superior Court correctly held that Mills-Williams failed to allege that she relied on Henderson's statement to her detriment. In her complaint, Mills-Williams alleged that "[i]n reasonable reliance on the representations made by Defendants, except Walker, [she] left her situation and accepted the position of Deputy Legal Counsel for the Office of the Governor." (J.A. 172.) However, Mills-Williams failed to describe what "her situation" was prior to accepting the Deputy Legal Counsel position; for instance, whether accepting the new position resulted in a loss of pay or other benefits relative to her prior employment, if any. Thus, Mills-Williams's second amended complaint failed to state a claim for negligent or fraudulent misrepresentation. Moreover, Mills-Williams's proposed third amended complaint did not plead any additional factual allegations with respect to the misrepresentation cause of action. Accordingly, the Superior Court committed no error when it denied leave to amend, including leave to re-add Henderson as a defendant in his official or individual capacity.

### 2. *Whistleblowers Protection Act*

Mills-Williams also asserted a claim under the Virgin Islands Whistleblowers Protection Act, 10 V.I.C. §§ 121-26. The Whistleblowers Protection Act provides in 10 V.I.C. § 122 that:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this territory or the United States to a public body unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

The Act defines "public body" in 10 V.I.C. § 121(d) as any of the following:

> (1) a territorial officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the territorial government;

(2) an agency, board, commission, council, member, or employee of the legislative branch of the territorial government;

(3) any other body which is created by the territory or which is primarily funded by or through territorial authority, or any member or employee of that body;

(4) a law enforcement agency or any member or employee of a law enforcement agency;

(5) the judiciary and any member or employee of the judiciary.

 As a threshold matter, we note that although Mills-Williams asserts this cause of action with respect to all defendants, section 122 expressly provides that an "employer" may not engage in the enumerated unlawful acts. The Act defines "employer" as "a person who has one or more employees," which "includes an agent of an employer and the Government of the United States Virgin Islands." 10 V.I.C. § 121(b). However, in her second amended complaint, Mills-Williams only identified Governor Mapp and the Office of the Governor as her employers, (J.A. 179), and in her proposed third amended complaint identified her employers as Governor Mapp, the Office of the Governor, and the Office of the Attorney General. (J.A. 106-07.) Because neither the second amended complaint nor the proposed third amended complaint contains any allegation that Knight or Walker were her employers, and the third amended complaint also contains no such allegation with respect to Henderson, Mills-Williams's cause of action must necessarily fail with respect to those individuals.[8]

With respect to the three entities that have been alleged to be her employer, in her November 4, 2015 second amended complaint, Mills-Williams alleged that she "report[ed] . . . a violation or a suspected violation of a law . . . to a public body" by transmitting the requested documents to the *St. Croix Avis* constituted reporting a violation to a public body. However, in its August 31, 2016 opinion, the Superior Court concluded that a private newspaper does not meet the definition of "public

---

[8] In its opinion, the Superior Court held that all defendants qualified as Mills-Williams's employer because they served as agents of her employer pursuant to section 121(b). (J.A. 17 n.14.) We question this holding, because Mills-Williams never actually pled, in either her second amended complaint or her proposed third amended complaint, that any of the defendants — other than Governor Mapp, the Office of the Governor, or the Office of the Attorney General — were an employer for purposes of the Act.

590

body" set forth in section 121(d). Mills-Williams does not contest this portion of the Superior Court's ruling on appeal; however, she does challenge the Superior Court's denial of her request for leave to amend her complaint to assert a different factual basis for her Whistleblowers Protection Act claim. Specifically, Mills-Williams proposed to amend her complaint to allege (1) that she reported a violation or suspected violation of law to Henderson when she told him that she believed Governor Mapp and Knight were acting illegally by wanting to review the documents before they were transmitted to the *St. Croix Avis*; and (2) that the defendants violated the Act when they terminated her employment after she filed her October 28, 2015 lawsuit.[9]

 The Superior Court rejected Mills-Williams's claim that she reported a violation or suspected violation of law to Henderson because that "the unique factual circumstances alleged here preclude the Court from holding that Mills-Williams's alleged conduct is protected by Title 10" because "Mills-Williams is claiming to 'report' an illegal directive from Mapp and Knight to the very person" — Henderson — "who just delivered that directive to her." (J.A. 20.) We disagree. "When interpreting the meaning of a statute, we first look to its plain text." *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014) (citing *Murrell v. People*, 54 V.I. 338, 352 (V.I. 2010)). The Superior Court is correct that it may be futile to report a violation or suspected violation of the law to the same individual who ordered the violation in the first place. But the Whistleblower Protection Act does not contain a futility exception; rather, it simply provides that "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee . . . because the employee . . . reports or is about to report, verbally or in writing, a violation or a suspected violation of a law . . . to a public body." 10 V.I.C. § 122. Henderson, as Chief Counsel to Governor Mapp, is a territorial officer or employee and clearly falls within the definition of "public body." 10 V.I.C. § 121(d)(1). To hold, as the Superior Court did in its August 31, 2016 opinion, that Mills-Williams is devoid of any protection under the

---

[9] In addition, the Superior Court also did not address Mills-Williams's claim in the November 4, 2015 second amended complaint that Governor Mapp and Attorney General Walker transferred her from the Office of the Governor to the Department of Justice in retaliation for making her report to Henderson. *See Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 241 (3d Cir. 2016) (transfer to a less desirable position is an adverse employment action for purposes of whistleblower statute).

Whistleblowers Protection Act simply because the public body she reported to is the same public body that ordered the alleged violation of the law is tantamount to rewriting the Act by establishing a futility exception that is not found in the statute. *See In re Reynolds*, 60 V.I. 330, 337 n.7 (V.I. 2013) ("[T]his Court . . . will not rewrite a statute."); *see also Workforce Development Cabinet v. Gaines*, 276 S.W.3d 789, 793-94 (Ky. 2008) (interpreting a statute virtually identical to 10 V.I.C. § 121 to hold that one may make a report to one's own agency).

■ ■ Moreover, the Superior Court committed error when it denied Mills-Williams's request to amend her complaint to assert a claim under the Whistleblower Protection Act that her termination from the Department of Justice was unlawful retaliation for filing her original October 28, 2015 complaint under the Whistleblowers Protection Act. The Whistleblower Protection Act prohibits an employer from discharging an employee who reports a violation or suspected violation of the law to a public body, *see* 10 V.I.C. § 122, and the Act includes the judiciary within the definition of "public body" to which a violation or suspected violation of the law may be reported. 10 V.I.C. § 121(d)(5). Consequently, as pled by Mills-Williams in this particular case, the October 28, 2015 lawsuit did constitute a report to a public body within the meaning of the Act.[10] *See Dirrane v. Brookline Police Dept.*, 315 F.3d 65, 73 (1st Cir. 2002) (holding that filing a lawsuit with a state court is making a "report" to a "public body" within the meaning of the Massachusetts whistleblower statute); *Hester v. Parker*, 2011 N.J. Super. Unpub. LEXIS 903, at *18 (N.J. Super. Ct. App. Div. Apr. 14, 2011)

---

[10] In reaching this decision, we emphasize that the mere fact that an employee was discharged or subject to other adverse job action after filing a lawsuit against his or her employer — without more — will not necessarily trigger liability under the Whistleblowers Protection Act. To hold otherwise would make "a complaint tantamount to a 'get out of jail free card' " that would immunize an employee who may have engaged in misconduct worthy of termination. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

In this particular case, however, Mills-Williams has pled sufficient facts that — if accepted as true — draw a clear causal link between her being placed on leave at the Department of Justice (which occurred the day after she filed her complaint) and subsequently terminated as an Assistant Attorney General. Significantly, Mills-Williams alleges that Governor Mapp, in his November 13, 2015 press release and in contemporaneous talk radio interviews, stated that he terminated Mills-Williams because of her association with the attorney who filed the complaint on her behalf. This allegation, if it is ultimately substantiated with sufficient proofs, would permit a finder of fact to infer that Mills-Williams was terminated because she retained an attorney to exercise her rights under the Whistleblowers Protection Act.

(unpublished) ("When, however, an employee complains of illegal activity in the workplace . . . and the employee thereafter files a complaint [with a court], the filing of the complaint may be a 'whistle-blowing activity' " within the meaning of the New Jersey whistleblower statute); *accord*, *Henry v. City of Detroit*, 234 Mich. App. 405, 594 N.W.2d 107, 112 (1999) (deposition testimony in a civil lawsuit is not a "report" to a "public body" when the plaintiff did not initiate the lawsuit, but was a mere witness).

Here, the October 28, 2015 complaint alleged suspected violations of the law, and the Act clearly prohibits an employer from discharging an employee who reports a violation or suspected violation of the law to a public body. 10 V.I.C. § 122; *accord*, *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 240 (3d Cir. 2016) (plaintiff not required to prove actual illegality of reported action, so long as plaintiff reasonably believed the act was unlawful); *Trychon v. Massachusetts Bay Transp. Auth.*, 90 Mass. App. Ct. 250, 59 N.E.3d 404, 410 (2016) (same). Consequently, assuming — as we must, at the motion to dismiss stage — that the factual allegations in her proposed third amended complaint are true, Mills-Williams's proposed amendment plausibly states a valid cause of action under the Whistleblowers Protection Act, in that she alleges that she was subject to adverse employment action in retaliation for filing her lawsuit.

In reaching this decision, we emphasize that our holding is limited solely to the factual allegations in both the second amended complaint and the proposed third amended complaint, and does not anticipate any defenses or arguments that the defendants have not yet raised or that were raised but not considered by the Superior Court. For instance, it appears that the Superior Court has not yet ruled on the defendants' claim that the Office of the Governor and the Office of the Attorney General are not proper parties to the action since they lack separate legal identity from the Government of the Virgin Islands. And, of course, Mills-Williams possesses an obligation to timely serve any newly-added parties on remand.

Likewise, although the defendants alleged that Governor Mapp possessed the plenary authority to remove Mills-Williams both as legal counsel and as an Assistant Attorney General, *see* 3 V.I.C. § 113(a); 48 U.S.C. § 1591; *Gov't of the V.I. v. Seafarers Int'l Union (Bason)*, 57 V.I. 649, 658 (V.I. 2012), *vacated as moot by Seafarers Int'l Union*

593

*(Bason) v. Gov't of the V.I.*, 767 F.3d 193, 61 V.I. 753 (3d Cir. 2014); the Superior Court never addressed this argument in its August 31, 2016 opinion. Similarly, the Superior Court did not directly address the fact that Mills-Williams served as an attorney within the Office of the Governor, and the conduct of attorneys is governed by the Rules of Professional Conduct promulgated by this Court. *In re Holcombe*, 63 V.I. 800, 843 (V.I. 2015). While courts have declined to hold lay employees to high standards when making a report under a whistleblower statute, *see, e.g., Fraternal Order of Police*, 842 F.3d at 240, other courts have held that unlike lay employees, "[l]awyers have special fiduciary obligations to their clients, and in-house lawyers have responsibilities to their employers that employees in other fields do not," which must be kept in mind "[i]n considering the applicability of the whistleblower statute to lawyers." *Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 232 (Minn. 2010) (Magnuson, C.J., concurring). Thus, it has been held that "when a lawyer breaches his or her fiduciary duty to the client, the client has an absolute right to terminate the attorney-client relationship," which "cannot be burdened by any claim from the lawyer for compensation or other damages," including under a statutory whistleblower act. *Id.* (collecting cases); *see also Balla v. Gambro, Inc.*, 145 Ill. 2d 492, 584 N.E.2d 104, 110, 164 Ill. Dec. 892 (1991) (in-house lawyers may not pursue whistleblower claims when doing so would be inconsistent with the Rules of Professional Conduct).

In this case, the limited record before us is unclear as to whether Mills-Williams served as counsel for Governor Mapp personally, or to the Office of the Governor as an entity. The identity of Mills-Williams's client may be significant, in that the Virgin Islands Rules of Professional Conduct provide that "a lawyer shall abide by a client's decisions concerning the objectives of representation," and "may take such action on behalf of the client as is impliedly authorized to carry out the representation." V.I.S.CT.R. 211.1.2(a). Since the factual allegations in Mills-Williams's proposed complaint reveal that Mills-Williams produced documents to the *St. Croix Avis* unilaterally without authorization from Governor Mapp, it may very well be the case that permitting Mills-Williams to pursue a claim under the Whistleblower Protection Act would be inconsistent with the Virgin Islands Rules of Professional Conduct. *See Kidwell*, 784 N.W.2d at 233 (Magnuson, C.J., concurring). This may be the case even if the Governor's directive were

to be found unlawful. *See Balla*, 584 N.E.2d at 110 ("[The defendant] did discharge appellee, and according to appellee's claims herein, his continued representation of [the defendant] would have resulted in a violation of the Rules of Professional Conduct. . . . However difficult economically and perhaps emotionally it is for in-house counsel to discontinue representing an employer/client, we refuse to allow in-house counsel to sue their employer/client for damages because they obeyed their ethical obligations.").

None of these issues, however, have in any way been addressed by the Superior Court. Therefore, while we reverse the dismissal of the whistleblower claims against Governor Mapp and the Office of the Governor, as well as the denial of the motion for leave to amend to assert a whistleblower claim against the Office of the Attorney General, we express no opinion as to whether those claims may survive further scrutiny on remand. *United Corp. v. Hamed*, 64 V.I. 297, 304-05 (V.I. 2016) (citing *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 541 (V.I. 2015)).

### 3. Defamation

Finally, Mills-Williams contends that the Superior Court erred when it denied her permission to amend her complaint to add a cause of action against all the defendants for defamation. In its August 31, 2016 opinion, the Superior Court held that the amendment would be futile because Governor Mapp enjoys absolute immunity for statements made in conjunction with his official duties.[11] In her appellate brief, Mills-

---

[11] In its opinion, the Superior Court recognized that the doctrine of absolute immunity for a jurisdiction's chief executive officer had not yet been adopted by this Court, and correctly applied the test mandated by *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), to extend the doctrine to the Virgin Islands. The Superior Court correctly recognized that several Virgin Islands courts had extended various degrees of immunity to Executive Branch officials. *See, e.g., Moorhead v. Millin*, 542 F. Supp. 614, 19 V.I. 155, 159-162 (D.V.I. 1982). Moreover, it correctly acknowledged that all of the jurisdictions to consider the issue "have agreed that the absolute privilege . . . protects the superior officers of the state governments, including at least the governor." RESTATEMENT (SECOND) OF TORTS § 591 cmt. c. Most importantly, the Superior Court rightly determined that absolute immunity for the Governor from liability for defamation represents the best rule for the Virgin Islands because it is "important that officials of government should be free to exercise their duties unembarrassed by the fear of . . . suits which would consume time and energies which would otherwise be devoted to governmental services and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo*, 360 U.S. 564, 571, 79 S. Ct. 1335, 3 L. Ed. 2d 1434 (1959). We adopt these findings, and

Williams argues that the Superior Court erred by (1) requiring her to anticipate the affirmative defense of immunity as a precondition to amending her complaint; and (2) conferring the same absolute immunity afforded onto Governor Mapp onto the other actual and proposed defendants.

 We agree that ordinarily a plaintiff need not anticipate an affirmative defense when filing a complaint. "[T]he Legislature has decreed that '[i]n civil cases the affirmative of the issue shall be proved.' " *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 544 (V.I. 2015) (quoting 5 V.I.C. § 740(5)). Applying this standard, to state a claim for defamation, Mills-Williams need only plead the elements of that cause of action, without anticipating any potential affirmative defenses that the defendants may — or may not — raise in their answer, such as absolute or qualified immunity. *See, e.g., Pedro v. Ranger Am. of V.I., Inc.*, 63 V.I. 511, 521-22 (V.I. 2015) (plaintiff not required to anticipate affirmative defenses in the complaint); *Rennie*, 62 V.I. at 544 ("[T]o state a claim . . . [the plaintiff] was not required to anticipate in his complaint any affirmative defenses [the defendant] might raise in its answer."); *Magens Point Resort Hotel v. Benjamin*, 58 V.I. 191, 196 (V.I. 2009) (noting that immunity had been waived by the Government). Importantly, the principle that a plaintiff need not anticipate an affirmative defense at the pleading stage applies equally to a request to amend a complaint to assert a new cause of action. *See, e.g., Shea v. Board of Educ. of the City of Chicago*, No. 13C8695, 2014 U.S. Dist. LEXIS 176438, at *6 (N.D. Ill. Dec. 19, 2014) (unpublished) ("In short, [the plaintiff's] request to amend Count II is not obviously futile, especially given that she need not anticipate and defeat affirmative defenses in her complaint.") (citing *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)).

 This case, however, is not ordinary, in that the Superior Court, although ostensibly ruling on a motion to amend a complaint, expressly stated that it would "consider both the motion to dismiss and the motion to amend simultaneously," and in effect treated the defendants' opposition to the motion to amend the complaint as if it were a motion to dismiss. (J.A. 10.) Importantly, the defendants' opposition asserted the absolute

---

therefore conclude that the Governor of the Virgin Islands is entitled to absolute immunity from defamation for statements made in conjunction with his official duties.

immunity defense, and Mills-Williams fully responded to the defense in her reply to the opposition. While the better practice may have been for the Superior Court to grant Mills-Williams leave to amend and then permit the defendants to assert their immunity defense in a motion to dismiss, reversing the Superior Court simply because it elected to treat the defendants' opposition as a motion to dismiss would needlessly elevate form over substance and waste judicial resources, given that on remand Governor Mapp would certainly move to dismiss the defamation claim based on an immunity defense, which the Superior Court would then grant for the same reasons stated in its August 31, 2016 opinion. *Harvey v. Christopher*, 55 V.I. 565, 569 n.2 (V.I. 2011).

 In its August 31, 2016 opinion, the Superior Court correctly recognized that the absolute immunity of the Governor from liability for defamation is not unlimited, in that it "exists only when the officer . . . publishes the defamatory matter in the performance of his official duties, or within the scope of his line of duty," such as "issu[ing] press releases giving the public information concerning the conduct of the department, or events of public interest that have occurred in connection with it." RESTATEMENT (SECOND) OF TORTS § 591 cmt. f. Although Mills-Williams maintains that Governor Mapp did not issue the press release and conduct his talk radio interviews in conjunction with his official duties as Governor of the Virgin Islands, we are persuaded by the decision of the Supreme Court of the United States in which it granted absolute immunity from defamation to an executive who issued an allegedly libelous press release that explained why a government employee had been fired. While the United States Supreme Court found that "[t]he question is a close one," it nevertheless found absolute immunity appropriate because

> a publicly expressed statement of the position of the agency head, announcing personnel action which he planned to take in reference to the charges so widely disseminated to the public, was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively. It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty.

597

*Barr v. Matteo*, 360 U.S. 564, 574-75, 79 S. Ct. 1335, 3 L. Ed. 2d 1434 (1959). By the time Governor Mapp made the comments in question, the matter had certainly become a subject of public interest, in that Mills-Williams — an executive branch employee — had filed a public lawsuit accusing the Governor and his staff of engaging in illegal acts. Consequently, Governor Mapp was certainly within his authority to publicly comment on the matter, including announcing his reasons for terminating Mills-Williams's employment.[12]

We also agree with the Superior Court that Mills-Williams's proposed amended complaint does not state a cause of action for defamation against any of the other named defendants. In her appellate brief, Mills-Williams correctly notes that the Superior Court erred to the extent it conferred the other defendants with absolute immunity, given that immunity is an affirmative defense that need not be anticipated and, in any event, "[t]he greater number of state courts . . . have expressly confined the absolute privilege to superior officers of the States," which "leaves the inferior state officers in these States with only a conditional privilege." RESTATEMENT (SECOND) OF TORTS § 591 cmt. c. However, in its August 31, 2016 opinion, the Superior Court stated in a footnote that it was denying leave to assert a defamation claim against the other defendants because although Mills-Williams's proposed complaint asserted a defamation claim against all defendants, the proposed complaint did not attribute specific defamatory acts to the other defendants, but "attempts to shoehorn the other defendants into liability for Mapp's press release and radio interview" in that "[t]he only facts alleged . . . concern Mapp drafting the release and giving the interview." (J.A. 29.) In other words, while the Superior Court denied leave to assert a defamation claim against Governor Mapp and the Office of the Governor on immunity grounds, with respect to the remaining defendants, leave to plead a defamation

---

[12] In her appellate brief, Mills-Williams argues that Governor Mapp acted outside the scope of his official duties when he made these statements because "the Whistleblower statute expressly prohibits this sort of retaliation on Whistleblowers." (Appellant's Br. 17.) However, as the United States Supreme Court explained in rejecting a similar argument, "[t]he claim of an unworthy purpose does not destroy the privilege." *Barr*, 360 U.S. at 575 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)). Significantly, as we explained above, the fact that Governor Mapp possesses an absolute immunity from liability for defamation for these statements does not mean that the statements cannot be used to attempt to establish liability for a different cause of action, such as retaliation in violation of 10 V.I.C. § 122.

claim was denied on grounds that the complaint failed to allege how the remaining defendants defamed Mills-Williams.

■ We need not decide as part of this appeal whether the other proposed defendants are themselves immune because we agree with the Superior Court that Mills-Williams's proposed complaint has failed to plead a defamation claim against those defendants. At the time Mills-Williams moved to amend her complaint, she was required to plead "a short and plain statement of the claim and its grounds." *Joseph v. Bureau of Corrections*, 54 V.I. 644, 650 (V.I. 2011) (quoting *Robles*, 49 V.I. at 499). A complaint that asserts a cause of action against a defendant, but contains absolutely no factual allegations whatsoever against the defendant as to what role the defendant played with respect to that cause of action, fails to meet this standard and is subject to dismissal. *See Martinez v. Minnis*, 257 Fed. Appx. 261, 266-67 (11th Cir. 2007); *Rahman v. Phillip*, No. 96-2321, 1996 U.S. App. LEXIS 33241, at *3 (2d Cir. Dec. 19, 1996) (unpublished).

■ In her appellate brief, Mills-Williams fails to explain how her proposed complaint — or even a further amendment to her proposed complaint — meets this standard. Rather, Mills-Williams primarily argues that the remaining defendants were not entitled to derivative immunity — even though immunity did not form the basis for the Superior Court's decision — and states only in a single sentence that "Mills-Williams alleged that Mapp's underlings intentionally and repeatedly republished the defamatory statements to assist in the smear campaign." (Appellant's Br. 18.) However, as the Superior Court correctly held, this type of cursory allegation "falls short of the pleading requirements for defamation," (J.A. 29), in that it provides the defendants with no notice as to what they said, to whom they said it, or how it might possibly be defamatory. *Ali v. Intertek Testing Services Caleb Brett*, 332 F. Supp. 2d 827, 831, 46 V.I. 279 (D.V.I. 2004) (defamation claims were not explicit enough to survive motion to dismiss where plaintiff did not specify when the allegedly defamatory statements were made, by whom they were made or what they contained). Consequently, the Superior Court committed no error when it denied Mills-Williams's motion to amend her complaint to assert a defamation claim.

## III. CONCLUSION

The Superior Court correctly applied the plausibility standard, and committed no error when it dismissed the misrepresentation cause of

action in the November 4, 2015 second amended complaint and denied leave to plead a defamation claim in the proposed third amended complaint. While the Superior Court committed no error when it dismissed the whistleblower claims against Knight and Walker and denied leave to raise a whistleblower claim against Henderson, it erred when it dismissed the whistleblower claim against Governor Mapp and the Office of the Governor and denied leave to amend to assert the claim against the Office of the Attorney General. Accordingly, we affirm in part and reverse in part the Superior Court's August 31, 2016 opinion, and remand the case to the Superior Court for further proceedings with respect to the whistleblower claims against Governor Mapp, the Office of the Governor, and — if properly served and found to have legal capacity to be sued — the Office of the Attorney General.