MATTHEW AUGUSTIN, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

LESLIE J. BURTON, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

GREGOR CALIXTE, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

JOSEPH PRESIDENT, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

ANTHONY TAYLOR, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

PATRICK CLARKE, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

HENRY T. FLEMMING, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

ARISTIDE Y. REDO, Plaintiff

v.

HESS OIL VIRGIN ISLANDS CORPORATION and HESS
CORPORATION, Defendants

Case Nos. SX-13-CV-427, SX-13-CV-431, SX-13-CV-435, SX-13-CV-443, SX-13-CV-459, SX-14-CV-171, SX-14-CV-188, SX-14-CV-216
Consolidated Under: In re Asbestos, Catalyst and Silica Toxic Dust Litigation, Case No. SX-15-CV-096

Superior Court of the Virgin Islands

Division of St. Croix

August 23, 2017

491

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI; KOREY A. NELSON, ESQ., KATIE K. MCGUIRE, ESQ.,[*] ALAYNE K. GOBEILLE, ESQ.,[*] C. JACOB GOWER, ESQ.,[*] Burns Charest LLP, New Orleans, LA; WARREN T. BURNS, ESQ., DANIEL H. CHAREST, ESQ., Burns Charest LLP, Dallas, TX; STEPHEN MURRAY, SR., ESQ.,[*] STEPHEN MURRAY, JR., ESQ.,[*] DEVIN A. LOWELL, ESQ.,[*] Murray Law Firm, New Orleans, LA, *For Plaintiffs and their Personal Representatives.*

---

[*] Admitted pro hac vice.

CARL A. BECKSTEDT III, ESQ., Beckstedt & Associates, Christiansted, USVI, *For Defendants Hess Oil Virgin Islands Corporation and Hess Corporation.*

MOLLOY, *Judge*

**MEMORANDUM OPINION**

(August 23, 2017)

**BEFORE THE COURT**, in each of the cases captioned above, is a motion for leave to file an amended complaint for wrongful death and/or survival claims. Missing are requests for leave to substitute the personal representative in place of each of the plaintiffs to continue their personal injury actions. However, because Defendants Hess Oil Virgin Islands Corporation ("HOVIC") and Hess Corporation ("Hess") have not opposed any of the motions, and because the request for leave to substitute is certainly implied by each motion, the Court will construe each motion as including a request for leave to substitute a personal representative on behalf of the plaintiff.

Also before the Court is a motion filed by one of the personal representatives for permission to exceed the page limits on the supplemental brief she submitted in response to questions the Court raised concerning the procedure by which personal representatives are appointed to continue civil actions on behalf of deceased parties, specifically whether the personal representative must be appointed through formal probate proceedings. Hess and HOVIC filed a notice in response to the personal representative's supplemental brief to state that they take no position on this issue. They also did not oppose the motion for leave to exceed the page limits.

For the reasons stated below, the Court will grant the motion to exceed the pages limits and grant the substitution motions, but only because of an intervening change in the law. The Court will also grant the Personal Representatives leave to amend or supplement the complaints to reflect their status in the case and to assert a wrongful death claim if appropriate. However, the proposed complaints the Personal Representatives submitted must be rejected because wrongful death claims and survival claims cannot be plead in the alternative.

## I. BACKGROUND

On December 19, 2013, Matthew Augustin, Leslie J. Burton, Gregor Calixte, Joseph President, and Anthony Taylor (and sixty-one others) sued Hess and HOVIC for negligence and demanded damages allegedly from exposure to asbestos during the years they worked at the former oil refinery on St. Croix. Approximately six months later, on May 17, 2014, Patrick Clark, Henry T. Flemming, and Aristede Y. Redo (and fifty-nine others) sued Hess and HOVIC for the same reasons: negligence in allowing them to be exposed to asbestos. The Superior Court opened a master case, captioned *In re Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, to coordinate pre-trial litigation in the individual cases simultaneously. *See generally In re Asbestos, Catalyst, Silica Toxic Dust Exposure Litig.*, 67 V.I. 544 (Super. Ct. 2017). During pre-trial litigation, these eight plaintiffs passed away. Personal representatives were appointed by the Probate Division of the Superior Court. Each filed a motion for leave to file a motion to amend the complaint to continue the lawsuits as survival actions. Each motion, and the proceedings related to that motion, is discussed further below.

### A. *Augustin*

Matthew Augustin ("Mr. Augustin") was born on November 5, 1948 on St. Lucia. He passed away on February 27, 2016 on St. Croix. Mr. Augustin's survivors include his wife, Lirle Augustin, his daughters, Jenyda and Charissa Augustin ("Charissa") and Cindy Augustin Gray, and his sons, Lawrence, Lance, and Jabari Augustin. On February 7, 2017, Charissa filed a motion in Mr. Augustin's case for leave to file an amended complaint to substitute herself in place of her father to continue his lawsuit. Charissa did not include a copy of Mr. Augustin's death certificate with her motion or an affidavit. She did, however, provide a copy of the memorial booklet that she and her family prepared prior to Mr. Augustin's funeral. Charissa also submitted a proposed amended complaint to her motion. In her motion, she acknowledged that it was premature, because she had not been appointed personal representative or petitioned for appointment as personal representative when the motion was filed. But a week later, on February 15, 2017, Charissa filed a petition, numbered SX-17-MP-002 and assigned to a Superior Court magistrate judge, for appointment as a personal representative. The

494

petition was not immediately granted, however, because Charissa failed to submit a copy of her father's death certificate. She later supplemented the petition and on March 20, 2017, the probate court[1] granted it and appointed Charissa as personal representative. On June 7, 2017, Charissa filed an amended motion for leave to amend the complaint in her father's civil case. To date, a petition to probate Mr. Augustin's estate has not been filed in the Virgin Islands.

## B. *Burton*

Leslie J. Burton ("Mr. Burton") was born on July 28, 1945 on Dominica. He passed away on October 6, 2015 in Decatur, Georgia. Mr. Burton's survivors include his wife, Catherine Defoe Burton ("Mrs. Burton"), his daughters, Delia Burton King ("Burton-King") and Jessica Burton Cox, and his sons, Leslie D. and Leslie J. Burton, Jr. On September 19, 2016, Burton-King filed a motion in Mr. Burton's individual case for leave to file an amended complaint. She did not file a motion, however, for leave to substitute herself in place of her father to continue his lawsuit. In support, Burton-King attached a proposed amended complaint and a copy of the petition she filed with the Probate Division on August 17, 2016 for appointment as personal representative. The Clerk's Office opened the August 17, 2016 petition as a miscellaneous probate matter numbered SX-16-MP-012 and randomly assigned it to a Superior Court magistrate judge. By order dated October 7, 2016 and entered October 11, 2016, the probate court granted Burton-King's petition and appointed her personal representative of the Estate of Leslie J. Burton.

However, three months earlier, on July 1, 2016, Mrs. Burton and her children had filed a petition for settlement of Mr. Burton's estate without administration. Counsel appeared on behalf of the Estate. The Clerk's Office opened the petition for probate, numbered SX-16-PB-054, and assigned it at random to a Superior Court magistrate judge. That probate

---

[1] The Virgin Islands does not have true probate courts yet. References to probate court are informal only. *Accord In re Michael R.*, 137 Cal. App. 4th 126, 39 Cal. Rptr. 3d 773, 775 n.1 (2006) ("Technically, California does not have probate courts. The term probate court is but a convenient way of expressing the concept of a superior court sitting in exercise of its probate jurisdiction. This is but a colloquial expression. The same is true for the term family court." (quotation marks, ellipsis, and citation omitted)).

court, not the same who granted Burton-King's petition, issued a final order of distribution in the *In re Estate of Leslie Joshua Burton* matter on October 31, 2016, entered November 4, 2016. The Clerk's Office closed the probate. So far as the Court can tell from its review of the record, the probate proceeding did not reference this case or the miscellaneous probate matter Burton-King filed two weeks before the *Estate of Burton* was closed.

### C. *Calixte*

Gregor Calixte ("Mr. Calixte") was born on May 5 or May 25, 1953[2] on St. Lucia. He passed away on August 28, 2014 on St. Croix. Mr. Calixte's survivors include his wife, Scholastica Francis Calixte ("Mrs. Calixte"), his daughters, Dionysia Joseph, Natasha Hurdle, and Latoya and Nasha Calixte, and his sons, Brookerly and Jawade Elibox Calixte. On August 26, 2015, Mrs. Calixte filed a motion in the master case for leave to file an amended complaint to substitute herself in place of her husband to continue his lawsuit. She attached a copy of Mr. Calixte's death certificate to her motion, a copy of an August 3, 2015 order entered in case number SX-15-MP-010, and a proposed amended complaint. Mrs. Calixte had filed a petition with the Probate Division on July 29, 2015 for appointment as personal representative, which the Clerk's Office opened as a miscellaneous probate matter and assigned randomly to a Superior Court magistrate judge. The probate court issued the August 3, 2015 Order, granting Mrs. Calixte's petition and appointing her personal representative of the Estate of Gregor Calixte. To date, a petition to probate Mr. Calixte's estate has not been filed in the Virgin Islands.

### D. *Clarke*

Patrick Clarke ("Mr. Clarke") was born on March 17, 1949 on St. Lucia. He passed away on December 2, 2015 on St. Croix. Mr. Clarke's survivors include his daughters, Aurea G. and Marlinda Clarke, Armarilis Mitchel, and Cathalina Clarke Baptiste ("Clarke-Baptiste"), and his sons, Nicholas Clarke and Zion Markomen (also known as Bennette Bryan

---

[2] The death certificate lists Mr. Calixte's birth date as May 5, 1953 whereas the proposed amended complaint lists the date as May 25, 1953.

Clarke). On June 2, 2016, Clarke-Baptiste filed a motion in the master case for leave to file an amended complaint to substitute herself in place of her father to continue his lawsuit. She attached to the motion a copy of Mr. Clarke's death certificate, a copy of a May 19, 2016 order entered in case number SX-16-MP-005, and a proposed amended complaint. Clarke-Baptiste had previously filed a petition with the Probate Division on February 12, 2016, which the Clerk's Office opened as a miscellaneous probate matter and randomly assigned to a Superior Court magistrate judge. On May 19, 2016, the probate court granted Clarke-Baptiste's petition and appointed her personal representative of the Estate of Patrick Clarke. To date, a petition to probate Mr. Clarke's estate has not been filed in the Virgin Islands.

### E. *Flemming*

Henry T. Flemming ("Mr. Flemming") was born on June 2, 1953 on St. Kitts. He passed away on May 31, 2015 on St. Croix. Mr. Flemming's survivors include his wife, Hyacinth L. Simon Flemming, his sons, Omari and Orson Fleming ("Orson"), and his daughter Orencia Flemming. On October 6, 2015, Orson filed a motion in the master case for leave to file an amended complaint to substitute himself as plaintiff and continue his father's lawsuit. He attached to the motion a copy of Mr. Flemming's death certificate, a copy of a September 30, 2015 order entered in case number SX-15-MP-012, and a proposed amended complaint. Orson had previously filed a petition with the Probate Division on September 21, 2015, which the Clerk's Office opened as a miscellaneous probate matter and randomly assigned to a Superior Court Magistrate judge. On September 30, 2017, the probate court granted Orson's petition and appointed him as personal representative of the Estate of Henry T. Flemming. To date, a petition to probate Mr. Flemming's estate has not been filed in the Virgin Islands.

### F. *President*

Joseph President ("Mr. President") was born on September 16, 1940 on St. Lucia. He passed away on November 8, 2014 on St. Croix. Mr. President's survivors include his wife, Winifred D. Ince President, and his sons, Sylvester, Isaac, and Moses President ("Moses"). On October 30, 2015, Moses filed a motion in the master case for leave to file an amended complaint to substitute himself as plaintiff to continue his

497

father's lawsuit. He attached to the motion a copy of Mr. President's death certificate, a copy of an October 14, 2015 order entered in case number SX-15-MP-13, and a proposed amended complaint. Moses had previously filed a petition with the Probate Division on September 21, 2015, which the Clerk's Office opened as a miscellaneous probate matter and randomly assigned to a Superior Court magistrate judge. On October 14, 2015, the probate court granted Moses' petition and appointed him as personal representative of the Estate of Joseph President. To date, a petition to probate Mr. President's estate has not been filed in the Virgin Islands.

### G. *Redo*

Aristide Y. Redo ("Mr. Redo") was born on August 31, 1931 in Trois-Rivières, Guadeloupe, Republic of France. He passed away on August 6, 2014 in Charlotte, North Carolina. Mr. Redo's survivors include his wife, Mary Redo ("Mrs. Redo"), his daughters, Dell, Ella, and Christine Redo, Yvette Rogers, and Carol Doughty, and his sons, Robert and Joel Redo. On July 29, 2016, Mrs. Redo filed a motion in the master case for leave to file an amended complaint to substitute herself as plaintiff to continue her husband's lawsuit. She attached to the motion a copy of Mr. Redo's death certificate and a proposed amended complaint. Mrs. Redo admitted that her motion was premature because had not been appointed personal representative. But she explained that she had filed a petition with the Probate Division on June 22, 2016, which the Clerk's Office opened as a miscellaneous probate matter numbered SX-16-MP-011 and randomly assigned to a Superior Court magistrate judge. By order dated June 22, 2016 and entered June 24, 2016, the probate court granted the petition and appointed Mrs. Redo personal representative of the Estate of Aristide Redo. Mrs. Redo did not supplement or amend her motion after her petition was granted. To date, a petition to probate Mr. Redo's estate has not been filed in the Virgin Islands.

### H. *Taylor*

Anthony Taylor ("Mr. Taylor") was born on June 14, 1961 on St. Lucia. He passed away on February 5, 2015 on St. Croix. Mr. Taylor's survivors include his mother, Mary Taylor, his daughters, Molisa Taylor and Wendy Defoe, and his sons, Ian, Elias, and Johnny Taylor ("Johnny"). On January 22, 2016, Johnny filed a motion in the master case for leave to file

an amended complaint to substitute himself as plaintiff to continue his father's lawsuit. He attached to the motion a copy of his father's death certificate, a copy of a January 7, 2016 order entered in case number SX-15-MP-018, and a proposed amended complaint. Johnny had previously filed a petition with the Probate Division on December 23, 2015, which the Clerk's Office opened as a miscellaneous probate matter and randomly assigned to a Superior Court magistrate judge. On January 7, 2016, the probate court granted Johnny's petition and appointed him as personal representative of the Estate of Anthony Taylor. To date, a petition to formally probate Mr. Taylor's estate has not been filed in the Virgin Islands.

\* \* \*

Because of the number of motions for leave to substitute personal representatives that had been filed and were still pending, and because the Court had at least twice before raised questions about whether an estate must formally exist before a personal representative can be appointed to continue a pending lawsuit, the Court, from the bench during a status conference held in the master case on September 7, 2016, requested supplemental briefing from counsel for the Personal Representatives. The Court reduced that ruling to writing by order issued the same day in the master case, September 7, 2016. The September 7, 2016 Order specifically directed the Personal Representatives

> to file a brief addressing the concerns raised from the bench regarding the appointment of personal representatives to continue a personal injury claim or to commence a wrongful death action and the existence at law of an estate before a personal representative is granted leave to substitute into an existing action or to bring a survival action or a wrongful death action.

(Order 1, entered Sept. 7, 2016.) The Court then gave the Personal Representatives thirty days to serve and file the supplemental brief and Defendants fourteen days to respond.

Although the September 7, 2016 Order was issued in the master case, one of the Personal Representatives, Mrs. Calixte, filed the supplemental brief in Mr. Calixte's individual case, on October 7, 2016. She also filed a motion the same day, also in Mr. Calixte's case, for leave to exceed the page limitations for the brief she submitted. Defendants later filed notice

on November 7, 2016 (also in *Calixte*) that they had no response to the supplemental brief and did not oppose the motion to exceed the page limits.

After the motions for leave to substitute had been filed in each case, as well as the supplemental brief in *Calixte*, the Supreme Court of the Virgin Islands promulgated the Virgin Islands Rules of Civil Procedure, which took effect on March 31, 2017. *See generally In re Adoption of V.I. Rules of Civ. P.*, Prom. Order No. 2007-001, 2017 V.I. Supreme LEXIS 22 (V.I. Apr. 3, 2017). Virgin Islands Rules of Civil Procedure 17, which concerns parties and their capacities to sue and be sued, Rule 25, which governs the procedure for substituting parties after death, and Rule 6-1, which governs motion practice, are among the new rules the Supreme Court promulgated.

## II. DISCUSSION

Before turning to the motions for leave to substitute personal representative, the Court will first address the related motion for leave to exceed the page limits. *Cf. Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 120 (Super. Ct. 2016) (courts generally resolve ancillary motions first because they may affect what arguments are before the court). After addressing the related motion, but before addressing the merits of the substitution motions, the Court will address the concerns previously raised about the appointment of personal representatives and their substitution into pending civil cases.

### A. Motion for Leave to Exceed Page Limitations

■ Contemporaneously with their supplemental brief, the Personal Representatives[3] also filed a motion for leave to exceed the page limits for

---

[3] For reasons unclear, the October 7, 2016 supplemental brief was filed only by Mrs. Calixte and only in *Gregor Calixte v. Hess Oil Virgin Islands Corporation, et al.*, case number SX-13-CV-435, rather than in the master case by all Personal Representatives. *Cf. Edwards v. Hess Oil V.I. Corp.*, SX-15-CV-382, 2017 V.I. LEXIS 94, at *9 (Super. Ct. June 28, 2017) ("Court papers are deemed filed in every case listed in the caption."). Yet, the Supplemental Brief makes arguments not just on behalf of Mrs. Calixte, but on behalf of all the Personal Representatives. (*See, e.g.*, Pl.'s [sic] Br. in Supp. of Mot. for Leave to File Am. Compl. 1, filed Oct. 7, 2016, *Calixte v. Hess Oil V.I. Corp., et al.*, SX-13-CV-435 ("*Movants* are several survivors of victims of asbestos exposure at the HOVIC refinery in St. Croix." (emphasis added).) So that the record is clear, the Court will construe the Supplemental Brief as though

that brief. In support, the Personal Representatives explain that the Court had "requested additional briefing" but "Plaintiffs were unable to condense their brief to comply with the page limits set forth in Local Rule 7.1 (as made applicable to this case in the governing case management orders)." (Pls.' Mot. for Leave to Exceed Page Limit 1, filed Oct. 7, 2016, *Calixte*, SX-13-CV-435.) No further explanation or justification was provided, nor was any authority cited other than Local Rule of Civil Procedure 7.1, a rule promulgated by the District Court of the Virgin Islands. Defendants, in their November 7, 2016 notice, expressed no opposition to this motion. Of course, "a 'motion is not automatically granted simply because it is unopposed.' " *Ayala v. Lockheed Martin Corp.*, 67 V.I. 290, 303 (Super. Ct. 2017) (quoting *Alumina Dust Claims*, 67 V.I. 172, 187 (Super Ct. 2017)). In other words, even though a motion is unopposed, courts must still determine whether to grant it, especially when the decision is within the court's discretion. *Cf. Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC*, 832 F.3d 50, 54-55 (1st Cir. 2016) (denial of motions for leave to exceed page limits reviewed for abuse of discretion).

Section 3(b) of the Case Management Order this Court issued in the master case directs that "[a]ll motion papers shall comply with Local Rules of Civil Procedure 7.1, 12.1, and 56.1 concerning page limits." Rule 7.1 provides that "[w]ith the exception of exhibits and other supporting documentation, no document filed with the Court shall exceed twenty (20) pages without leave of Court." (Case Mgmt. Order 4, entered Mar. 19, 2015.) Excluding the affidavits the Personal Representatives attached, and signature blocks for the Plaintiffs' attorneys (which alone takes up two pages), the supplemental brief itself only exceeds the twenty-page limit by four pages.

■ At the time when the Case Management Order was issued, the Superior Court routinely applied through Superior Court Rule 7 many of the rules the District Court of the Virgin Islands promulgated, including Rules 7.1, 12.1, and 56.1. *Accord Mitchell v. Gen. Eng'g Corp.*, 67 V.I. 271, 283 (Super. Ct. 2017). The Supreme Court of the Virgin Islands has criticized this uncritical application by the Superior Court of the Virgin Islands of rules promulgated by other courts. *See Vanterpool v.*

---

all Personal Representatives filed it and direct the Clerk's Office to docket a copy of the supplemental brief in the master case, *nunc pro tunc*.

*Government of the Virgin Islands*, 63 V.I. 563, 576 (V.I. 2015) ("Such uncritical application of the rules of another court to a proceeding in the Superior Court is wholly inconsistent with our admonition that 'the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Rules of the District Court should represent rules of last resort rather than first resort, and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other applicable procedure.' " (quoting *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014)) (brackets omitted)). However, the Supreme Court has not had occasion to address Rule 7.1 specifically, or more generally, what inherent authority courts have to place limits on the number of pages of motion papers. Two Superior Court judges addressed motions for leave to exceed page limit. *See Abednego v. St. Croix Alumina, LLC*, 63 V.I. 153, 184 (Super. Ct. 2015); *Jones v. Jerome*, 62 V.I. 160, 161 n.1 (Super. Ct. 2015). But in each case, the court granted the motion without discussion. Similarly, the District Court of the Virgin Islands has also addressed motions to exceed page limits in *Chapin v. Great Southern Wood Preserving, Inc.*, Civ. No. 2012-77, 2016 U.S. Dist. LEXIS 60805 (D.V.I. May 9, 2016), but there, only in passing and only in discussing the procedural history to the case.

■■ Thus, no court in the Virgin Islands has addressed why (or even whether) courts can or should impose pages limits on court papers. Other courts have. For example, in *Kernan v. Commissioner of Internal Revenue*, 108 T.C.M. (CCH) 503 (T.C. 2014), *aff'd* 670 Fed. Appx. 944 (9th Cir. 2016), the United States Tax Court succinctly explained some of the problems with, and the reasons why, courts impose page limits on court papers.

> Judges impose page limits for a reason. They force parties to hone their arguments and to state those arguments succinctly. Page limits cause, or should cause, parties to dispense with arguments of little or no merit in favor of those arguments that have a better chance of carrying the day. They encourage parties to avoid redundancy. And repetition. Parties often are quite creative in their efforts to circumvent page limits. Among the most blatant methods is to put material into an appendix and to not count that appendix as falling within the page limits. Another is to incorporate another document by reference. Less blatant,

> but still obvious, are those instances in which parties shrink the margins or the font size so that they can squeeze more text within the page limits that were imposed. . . . Then there are methods that, while perhaps in technical conformity with our Rules, diminish the quality of a brief. Examples include moving text into footnotes or using extensive block quotations so that the author can single-space more of the text.

*Kernan*, 108 T.C.M. (CCH) 503 at 9-10 (footnotes and paragraph breaks omitted). This Court agrees with the reasoning and the concerns *Kernan* expressed and further agrees that parties should limit their arguments and only raise those arguments that carry the most weight. But that's not always possible to do in twenty pages.

■ As with surresponses and surreplies, which are generally "disfavored because parties are expected to fully and expeditiously address all matters raised in the original motion in their responses," courts do grant leave to "further respon[d] or reply [when it] will aid the court by addressing relevant issues, including issues that might otherwise be waived if not timely raised." *Der Weer*, 64 V.I. at 122 (quotation marks and citation omitted). So too with motions to exceed page limits — if allowing additional pages can help the court to resolve a complicated issue or complex questions of law, then leave to exceed page limits should generally be granted. But requesting leave to exceed the page limits should be the exception, not the norm.

■ Because of the significance of the issues raised here, and because the appointment of personal representatives was a question of first impression in the Virgin Islands, the Court will grant the motion for leave to exceed the page limits. Again, the Personal Representatives' brief only exceeded the limit by four pages. But the Court must express concern at what might have become a common practice in the Virgin Islands: filing a motion for leave to do some act and then doing that act simultaneously or shortly after the request is filed without awaiting the court's ruling. *Cf. In re Red Dust Claims*, SX-15-CV-620, 2017 V.I. LEXIS 98, at *24 (Super. Ct. July 7, 2017) ("[C]ourts in the Virgin Islands have not yet considered whether a moving party, faced with a pending motion for an extension of time or for leave to act out-of-time, should proceed as if the motion were granted. Courts in other jurisdictions strongly disapprove of the practice. But our courts must ask what is the soundest rule for the Virgin Islands." (quoting *Edwards v. Hess Oil V.I. Corp.*, SX-15-CV-382, 2017 V.I. LEXIS 94, at *8 n.4 (Super. Ct. June 28, 2017))).

Here, the Personal Representatives fail to explain why they could not file their motion sooner. They did explain, however, that it was the Court who asked for briefing on "five separate, but related questions," "as to whether court-appointed personal representatives of . . . estates . . . must . . . [first] open[ ] probate [proceedings] in order to pursue claims on behalf of those estates." (Pls.' Mot. 1.) Clearly, then, they appreciated — well in advance of the thirty-day briefing deadline allowed by the September 7, 2016 Order — that more than twenty pages would be needed to address these issues. They should have immediately requested leave to exceed the page limits, not wait until the same day the brief was filed to make that request, which was the last day that the brief could have been filed.

■ Filing a document at the same time a request related to that document is filed puts courts in the awkward position of having to unring the bell. Here, if the Court were inclined to deny the Personal Representatives' motion, the Court would have to either reject their supplemental brief — and since it was filed on the last possible day, *sua sponte* extend the briefing deadline or else await further motions — or disregard those pages that exceeded the limit. Neither option is all that palatable. One could make a persuasive argument — juxtaposing the number of cases pending in the Superior Court and the number of active Superior Court judges and magistrates judges at present, *cf. Edwards*, 2017 V.I. LEXIS 94, at *8 n.4 — that the better approach is to allow such ancillary requests as motions for more time or for leave to submit additional briefing to be presumed granted if the request is unopposed, subject to the court's ultimate determination whether good cause was in fact shown. And if not, the filing could be disregarded or even stricken. *Cf. Der Weer*, 64 V.I. at 127 (courts have inherent authority to control record and strike improperly-filed papers). The problem with filing a motion for leave to do some act at the same time the act is done is that it forces the court either to rule on the motion after the fact without awaiting a response from the other parties or to allow the response time (and the reply time) to pass and then grant the motion and allow the (technically already filed) paper to remain on file or deny the motion and send everyone back to "square one." But the more basic concern, however, is depriving the court of the ability to manage its docket. "Rules of procedure are vitally important in judges' efforts to manage burgeoning caseloads with some semblance of efficiency." *Air Line Pilots Ass'n v.*

*Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir. 1994) (citation omitted).

Here, at the time when the Personal Representatives filed their motion — simultaneously with their supplemental brief — the Superior Court did not have its own rule governing page limits. But now we do and that rule requires that leave be obtained first. *See* V.I. R. CIV. P. 6-1(e) ("[A]ll motions, responses and replies filed with the court shall not exceed the greater of 20 pages or 3,500 words in length unless leave of court has been obtained *in advance* for a longer submission." (emphasis added)).

## B. Motions for Leave to Amend/Substitute

### (1) Death of a Party

■ ■ Before turning to the Personal Representatives' motions, the Court must first address the concerns that were raised previously, regarding the procedure for appointing personal representatives. Procedurally-speaking, under Virgin Islands law, "when someone dies two things happen. First, any personal injury claims the person may have had abate unless there is authority extending the life of those claims." *Der Weer v. Hess Oil V.I. Corp.*, 61 V.I. 87, 102 (Super. Ct. 2014). Claims for "physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured." 5 V.I.C. § 77. Also property and contract claims do not abate upon a person's death. *Cf. Der Weer*, 61 V.I. at 98 (" 'At common law, all causes of action for personal torts abated on the death of either the injured party or the tortfeasor. The rule was expressed in the maxim, *actio personalis moritur cum persona*, i.e., a personal action dies with the person. Other causes of action, principally property and contract claims, did not abate with the death of a party.' " (*quoting Sullivan v. Delta Air Lines, Inc.*, 15 Cal. 4th 288, 63 Cal. Rptr. 2d 74, 935 P.2d 781, 784 (1997), parenthetically)). If a claim has not been filed in court before a person dies, the claim "may be commenced by [the decedent's] personal representatives, after the expiration of the time [limited for commencement] and within one year from . . . death," 5 V.I.C. § 37(a). If a claim has been filed and is still pending when a person dies, the claim may "be continued by . . . [the decedent's] personal representatives or successor in interest" "at any time within two years thereafter, on

motion." *Id.* § 78. Claims brought by or continued by a personal representative are often referred to as survival claims or survival actions. But "a survival claim is not really a claim. It is merely a vehicle for pursuing someone else's claims." *Der Weer*, 61 V.I. at 103. "Second, if a person's death was caused by or resulted from someone else's actions or failure to act, then that person's survivors can only recover if authority creates a cause of action for wrongful death." *Id.* at 102. Virgin Islands law gives the survivors of someone whose death occurred wrongfully, the right to sue for wrongful death. *See generally* 5 V.I.C § 76. In each instance, the survival action is either continued by or brought by, and the wrongful death action is brought by, someone acting in a representative capacity. *Cf.* 5 V.I.C. § 37(a) ("[A]n action may be commenced by his personal representatives."); *id.* § 78 ("In case of the death or disability of a party, the court may . . . allow the action to be continued by . . . his personal representatives."); *see also id.* § 76(d) ("The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages."). This representative capacity was at the heart of the Court's concern and the reason why the Court requested supplemental briefing

Virgin Islands law does not define the phrase "personal representative" — at least not in the context of prosecuting or defending civil actions in court. *But cf.* 15 V.I.C. § 1-201(35) (" 'Personal representative' includes executor[,] administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status.").[4] In fact, "[t]he Virgin Islands Code does not require that courts appoint personal representatives or

---

[4] The status of the definitions provided in article I, part 2, section 1-201 of title 15 of the Virgin Islands Uniform Probate and Fiduciary Relations Code is at best uncertain. The Virgin Islands Legislature adopted the Uniform Probate Code in 2009, with an effective date of May 1, 2010. *See generally Rogers v. Kodran*, SX-09-CV-223, 2012 V.I. LEXIS 91, at *9-11 n.2 (Super Ct. Feb. 1, 2012) (providing further background concerning the Uniform Guardianship and Protective Proceedings Act adopted simultaneously). "In May 2010, the Legislature stayed implementation until January 1, 2011. In November 2010, the Legislature further stayed implementation until July 1, 2011. In April 2011, the Legislature 're-enacted title 15 Virgin Islands Code, Part I Decedents Estates, chapters 1-5, and Part II Administration of Estates, chapters 11-29 as they existed prior to December 21, 2009.' " *Id.* at *10 n.2 (brackets omitted) (citing Act 7174 § 12(a), 2010 V.I. Sess. L. 92, 95-96 (May 17, 2010); Act 7241, § 6(b), 2010 V.I. Sess. L. 284, 289 (Nov. 24, 2010)) (quoting Act 7254, § 3, 2011 V.I. Sess. L. 37, 46 (Apr. 9, 2011)). When the Legislature repealed the Uniform Probate Code and reenacted the prior probate code, the Legislature further directed that

authorize them to do so. If courts do have the authority to appoint a personal representative, it may be inherent in the authority to supervise probate proceedings." *In re Alumina Dust Claims*, 67 V.I. 172, 192 n.13 (Super. Ct. 2017). Courts are not left without any guidance, however. Section 4901 of title 5 of the Virgin Islands Code, which governs the basis exercising personal jurisdiction over persons outside the Territory, defines the term person to "include[ ] an individual, his executor, administrator, or other personal representative." One could interpret from the placement of the terms "executor" and "administrator" before the phrase "personal representative" that a personal representative is akin to an executor or an administrator, both of which require appointment by a court. (*But cf.* Supp. Br. 10-11 ("The dichotomy is even more clear in § 4901, which specifically distinguishes between an executor, administrator, or other personal representative, delineating those capacities in the disjunctive 'or' manner and showing that while an 'executor' and an 'administrator' are species of personal representative, they are not the only way the term is used.").) Additional support for viewing the terms synonymously can be found in the Probate Code, specifically section 601 of title 15 of the Virgin Islands Code, which provides that

> causes of action by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. When the cause of action survives, as herein provided, the executors or administrators may maintain an action thereon against the party against whom the cause of action accrued, or, after his death, against his personal representatives.

---

> [t]hese parts and chapters shall have the effect and meaning they had prior to December 21, 2009 and where there is a meaning in the surviving parts of Act 7150 that is different from the meaning in the re-enacted parts I and II of title 15 Virgin Islands Code, the meaning in parts I and II of title 15 Virgin Islands Code shall control.

Act 7254, § 3, 2011 V.I. Sess. L. at 46. Act 7150 was the legislation that initially enacted the Virgin Islands Uniform Probate and Fiduciary Relations Code. What relevance the definitions in section 1-201 have for the reinstated probate code is unclear. While courts should strive to harmonize statutes, here harmony might be discordant for the Personal Representatives because section 1-201(35) defines "personal representative" similarly as the Court does, as a catch-all for executors, administrators, and the like. Given the uncertain status of these definitions, the Court notes that they were not repealed by Act 7254. But the Court declines to look to them for guidance here.

Here too "executor" and "administrator" appear to be used interchangeably with "personal representative."

If the phrase "personal representative" does not include "executor" and "administrator," meaning these terms of art are not synonymous, then section 601, which directs that the executor or administrator must continue the action after death, directly conflicts with sections 78 of title 5, which directs that the personal representative continues the action after death. *Compare* 15 V.I.C. § 601 ("When the cause of action survives, as herein provided, the executors or administrators may maintain an action thereon against the party against whom the cause of action accrued, or, after his death, against his personal representatives."), *with* 5 V.I.C. § 78 ("In case of the death or disability of a party, the court may . . . allow the action to be continued by . . . his personal representatives."). But if executors and administrators are simply two types, or species as the Personal Representatives put it, of personal representatives — just as magistrates, judges, and justices are all types of judicial officers — then there is no conflict. A personal representative would include both an executor and an administrator. That would also mean that a personal representative must be either an executor or an administrator.

The Personal Representatives argue that section 601

> merely provides that, in the event that probate has been opened, and an executor or administrator has been appointed, that person may also pursue the survival claims available to a personal representative. Thus, Title 15 V.I.C. § 601 shows us that requiring probate to be opened is the exception, not the rule, for bringing a survival and/or wrongful death action via a personal representative.

(Supp. Br. 9.) But they claim that "persons who are appointed through [m]iscellaneous [probate] actions as 'personal representatives' are no less fiduciaries than are executors or those receiving Letters Testamentary." *Id.* at 12 (citing 15 V.I.C. § 1-201(15)) (footnote omitted).

The Personal Representatives correctly stated the Court's overall concern, namely "whether an estate exists without the opening of probate. The Court expressed concern that, if an estate does not yet exist until probate is opened, then there would be no viable entity to assert and recover claims, nor would there be any estate client to whom undersigned counsel are answerable." *Id.* at 12-13. The Personal Representatives

attempt to assuage the Court's concerns by pointing to the "enacted and then repealed Uniform Probate Code of the Virgin Islands," *id.* at 13, the fact that "Virgin Islands courts, both territorial and federal, have allowed personal representatives to bring survival actions without opening probate," *id.* at 14 (citations omitted), then to "persuasive authority from other jurisdictions," *id.* at 15, and finally public policy, *see id.* at 21-22. Notwithstanding their thorough review, the concerns still remain, in large part because the Personal Representatives' analysis was, understandably, driven by the result they seek: not being required to open an estate.[5]

 To be clear, the Court's concern was not whether an estate must be opened *before* a wrongful death action can be filed. None of the cases in this litigation were commenced as wrongful death actions. Further, this Court previously held that wrongful death claims do not belong to the

---

[5] In their Supplemental Brief, the Personal Representatives chastise, ever so slightly, the judiciary for not having addressed this question before:

> Judges in the Territory commonly use the term "personal representative" when discussing the plaintiffs in wrongful death and survival actions. However, their opinions have no discussion, nor even mention, whether the personal representative was appointed via a formal probate process. If formal probate was a true requirement by statute, would not the court write a short discussion noting the formal probate personal representative appointment process was complied with before moving into the merits of the case?

(Supp. Br. 15 n.11 (citing *Booth v. Bowen*, Civ. No. 2006-217, 2008 U.S. Dist. LEXIS 1678 (D.V.I. Jan. 10, 2008); *Cebedo v. Tobal*, 240 F. Supp. 2d 373 (D.V.I. App. Div. 2003); *Hall v. Hall*, Civ. No. 2011-54, 2013 U.S. Dist. LEXIS 112879 (D.V.I. Aug. 9, 2013); *Mingolla v. Minn. Mining & Manufacturing Co.*, 893 F. Supp. 499 (D.V.I. 1995).) Point taken. But the Personal Representatives overlook that courts have at least *implied* that an estate should exist. *Cf. Mingolla*, 893 F. Supp. at 508 ("[A]ppointment of Joseph Mingolla, II as personal representative of *the Joseph Mingolla, Sr. Estate* relates back to the commencement of this suit." (emphasis added)). And the Personal Representatives also ignore *Brown v. Lorillard, Inc.*, ST-10-CV-692, 2012 V.I. LEXIS 107 (Super. Ct. Mar. 30, 2012), and *England v. Lorillard, Inc.*, ST-10-CV-631, 2012 V.I. LEXIS 106 (Super. Ct. Jan. 23, 2012), discussed further below. Based on the Personal Representatives' invitation, the Court has endeavored to explain its concerns, notwithstanding that the law changed recently. *Cf. Companion Assurance Co. v. Smith*, 66 V.I. 562, 569 (V.I. 2017) ("[R]ules . . . have the force of law, and are to be interpreted and construed in the same manner as statutes." (citations omitted)). *But cf. Gov't of the V.I. v. Durant*, 49 V.I. 366, 373 (V.I. 2008) (*per curiam*) ("The ROA authorizes the local courts to create only procedural rules, not *substantive* ones." (emphasis added)). " '[L]ower courts' " in the Virgin Islands have been encouraged to undertake "an 'independent' analysis, which will [if nothing else] help 'improve the quality of appellate decisions.' " *Der Weer*, 61 V.I. at 105 n.4 (quoting *Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014) (*per curiam*)). Should the issue arise, other courts will at least have the benefit of this Court's concerns.

decedent or her or his estate, but to the persons left behind, the survivors. *See Der Weer*, 61 V.I. at 110 ("Because wrongful death actions and survival actions redress different wrongs, they benefit different parties." (citations omitted)); *see also id.* at 111 ("Damages a deceased person may have suffered from a personal injury are recovered in a survival action and are completely separate from, and even unrelated to, the damages of his survivors for wrongful death."). "While both actions must be brought by a personal representative, and while the same individual could, if granted the representative authority, assert both claims in the same action, the wrongful death action is not the same as the survival action." *Id.* at 110. This distinction is central here because, while the wrongful death action may have to "be brought by the decedent's personal representative . . . for the benefit of the decedent's survivors and estate," 5 V.I.C. § 76(d), the personal representative is not acting as a fiduciary for the estate — at least not exclusively — in a wrongful death action, but for the survivors and the estate. By contrast, in a survival action, the only beneficiary is the estate. Here, the representative capacity is quite like the class representative in a class action, a point Plaintiffs' counsel had made. (*See* Hr'g Tr. 21:20-21, Mar. 23, 2016 ("[I]t's very similar to what happens in a class action, where you have a class representative.")).

> You have an entity that the [c]ourt has not yet created, yet that entity has interests that need to be represented in the interim until it is created. So there — courts recognize the existence of a putative class, that is a class that may exist, and the individuals in that putative class have rights that need to be protected.
>
> So courts appoint a class representative to represent the interest of the putative class until the court can determine whether or not the class should be certified and hence come into existence, and I would say that that's the situation that we have here . . . .
>
> And I think that's why that — that that mechanism exists, is so that you have an individual who can represent the interest of the estate until such time as the estate comes into fruition. Otherwise, you have the tail wagging the dog.

*Id.* at 22:18-23:13.

 The crucial difference between wrongful death actions and survival actions is that the putative "entities" generally are known in a

wrongful death action. They are the survivors: "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." 5 V.I.C. § 76(b)(1). In this sense, counsel's analogy would be more apt after a class has been certified and the representative appointed. But in a survival action, who knows who the beneficiaries may be. The wrinkle in the law is that the Virgin Islands Wrongful Death Act defines the "parties" to a wrongful death action to include the survivors and the estate. And it is the estate that is common in both wrongful death actions and survival actions. However, "survivors," as defined by the Virgin Islands Wrongful Death Act, are not the parties to a survival action because the claims that survived the claimant's death belong to him and then to his estate after death. But if the estate does not exist, meaning formal probate proceedings have not been commenced, then the estate of the deceased plaintiff (or a deceased defendant) is like a putative party in the sense used by counsel.

 "[C]omplex litigation is aptly called complex for a reason — sometimes getting to the legal issues requires the use of a scalpel and not an axe." *Daniel v. Borinquen Insulation Co.*, SX-98-CV-192, 2017 V.I. LEXIS 117, at *17 (Super. Ct. June 28, 2017); *cf. In re Implementation of Differentiated Case Mgmt. Sys. Time Standards for Civ. Cases in the Super. Ct. of the V.I.*, Prom. Order No. 2016-MC-51, 2016 V.I. LEXIS 216, at *11 (Super. Ct. July 29, 2016) (designating wrongful death claims and asbestos/toxic tort claims as complex cases). So, precision is called for here. The Personal Representatives are correct in one regard: an "estate exists upon the death of the decedent, whether a probate has been opened or not. The opening of probate does not create an estate." (Supp. Br. 13.) The word "probate" derives from Latin and means "to prove." *See, e.g., Johnson v. Harrison*, 47 Minn. 575, 50 N.W. 923, 924 (1891) ("And while the word 'probate' originally meant merely 'relating to proof,' and afterwards 'relating to the proof of wills,' yet in the American law it is now a general name or term used to include all matters of which probate courts have jurisdiction, which in this state are 'the estates of deceased persons and of persons under guardianship.' "); John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 HARV. L. REV. 1108, 1108 n.1 (1984) ("The term probate originally applied only to the proceedings used to prove (*probare*) a will; it stood in contrast to administration, which comprehended all subsequent

proceedings winding up the estate. In modern American usage, probate embraces administration and hence extends to the administration of both testate and intestate estates." (quotation marks and citation omitted)); *cf. City of Dayton v. Ahmad*, 2011 Ohio 2302 ¶ 65 (Ct. App. 2011) (Grady, P.J., concurring) (" 'Probative' is an adjectival form of the word probate, which derives from the Latin term *probatum*, meaning 'something proved.' ").

> "The term probate is commonly used with reference to the formal establishment of a document as the last will and testament of the testator as a basis for the distribution of his property and the issuance of letters testamentary to the persons named therein as executors. . . . The term "probate," however, also has a broader meaning, including all proceedings incident to the administration and settlement of estates and perhaps also the establishment of the meaning of a will as well as its execution."

*In re Estate of Alexander*, 63 A.D.2d 612, 405 N.Y.S.2d 613, 614 (1978) (Murphy, P.J., dissenting) (quoting *Chase Nat'l Bank v. Chicago Title & Trust Co.*, 164 Misc. 508, 299 N.Y.S. 926, 941 (Sup. Ct. 1934)); *accord In re: Will of Lamb*, 303 N.C. 452, 279 S.E.2d 781, 786 (1981) ("The word 'probate' means the judicial process by which a court of competent jurisdiction in a duly constituted proceeding tests the validity of the instrument before the court, and ascertains whether or not it is the last will of the deceased." (citing *In re Will of Marks*, 259 N.C. 326, 130 S.E.2d 673 (1963); *Brissie v. Craig*, 232 N.C. 701, 62 S.E.2d 330 (1950); *Steven's Executors v. Smart's Executors*, 4 N.C. 83 (1814)).

It is this broader and more general sense of the word probate the Court had in mind, the proceedings to administer, settle, and transfer one person's property — both real and personal, including choses in action — to another and how courts in the Virgin Islands empower a personal representative to take on some of this responsibility if letters testamentary or of administration are not issued.

> Candor compels the confession, however, that the misapprehension of the plaintiffs is understandable. Judges, like other men, have nothing except words in which to phrase their ideas, and the limitations of language produce much perplexity in the lexicon of the law. This observation finds ready illustration in the differing and sometimes inexact

512

meanings given to identical terms in decisions concerned with the probate of wills.

*Brissie*, 62 S.E.2d at 333 (citation omitted). If the Court was imprecise earlier, the Court elaborates here, because one of the reservations the Court had concerned potential creditors, particularly if the phrase personal representative was intended to be synonymous with the terms executor or administrator, as well as other heirs of the decedent.

If personal representatives are appointed in the Superior Court of the Virgin Islands through "what are essentially *ex parte*, non-adversarial miscellaneous proceedings that give a semblance of legal status to an estate, but without formally opening an estate or, for example, giving notice to creditors or requiring that the personal representative acting on the estate's behalf be bonded," *Alumina Dust Claims*, 67 V.I. at 192 n.13 (citing 15 V.I.C. § 239(a)), then indeed "[c]oncerns could arise." *Id.* First, the judge presiding over the civil action has no assurances that the personal representative appointed by the Probate Court is the proper party. *But see* V.I. R. CIV. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party."). That is, the judge presiding over the civil action does not determine whether the proposed personal representative is the proper party. Instead, the probate court makes the appointment through an *ex parte*, non-adversarial, miscellaneous probate proceeding that occurs outside of the civil action. The tail wags the dog here. What else can the judge presiding over the civil action do, other than allow substitution by the person the probate court appointed? If that is correct, it effectively deprives the judge of any discretion to decide whether to allow substitution and who to substitute. *Cf. In re Estate of Johnson*, 2010 WY 63, 231 P.3d 873, 881 (2010) ("The only test of who is appointed as personal representative, despite the lack of guidance within the wrongful death act, cannot simply be who first gets to the courthouse.").

Similarly, regarding creditors, must the personal representative appointed through a miscellaneous probate proceeding give notice to creditors? Virgin Islands law requires that "[e]very executor or administrator shall, immediately after his appointment, publish a notice . . . . Such notice shall require all persons having claims against the estate to present them, with the proper vouchers, within six months from the date of the notice, to the executor or administrator." 15 V.I.C. § 391. If

513

executors and administrators are a "specie" of personal representatives, then shouldn't even the personal representative appointed to take over a pending civil action have to give notice to creditors? Or, does the personal representative only have to commence probate proceedings and formally open an estate once judgment is entered or a settlement reached, assuming money exchanges hands? Or can the personal representative bypass probate entirely? If so, it could mean that Virgin Islands courts are unknowingly complicit in helping the heirs avoid the creditors' claims of the deceased. Assume for argument's sake that a jury awards Mrs. Calixte or Clarke-Baptiste three million dollars in damages. Assume further that Mr. Calixte or Mr. Clarke, before they died, left a two-thousand-dollar balance due on a credit card or a five-hundred-dollar bill with a local vendor. Mrs. Calixte and Clarke-Baptiste's response to the Court's concerns is that, that's not their concern. They do not have to give notice to creditors at any time, even if after they receive a sizeable settlement, because they do not have to commence formal probate proceedings at any time. Instead, "the onus is on the *creditor* to open probate: 'All awards for the decedent's estate are subject to the claims of *creditors who have complied with the requirements of probate law* concerning claims.' " (Supp. Br. 7-8 (quoting 5 V.I.C. § 76(e)).)

Lastly, if the person appointed personal representative to maintain or commence a survival action does not have to be named in a will or qualified under the law as an administrator, *see* 15 V.I.C. §§ 235(a), 236, then disputes could arise later over whether that person was in fact the proper party or even a proper party. *Cf.* V.I. R. CIV. P. 25(a)(1) ("[T]he court may order substitution of *the proper party.*" (emphasis added)). Two other Superior Court judges have raised similar concerns. *See generally Brown v. Lorillard, Inc.*, ST-10-CV-692, 2012 V.I. LEXIS 107, at *5-7 (Super. Ct. Mar. 30, 2012) ("While this Court cannot disregard the persuasive authority allowing an individual who has not received letters testamentary or letters of administration to represent a yet-to-be probated estate, the Court does question the wisdom of eliminating the initiation of probate proceedings, at least the acquisition of letters testamentary or letters of administration, and only reluctantly follows the holdings cited by Plaintiff. *This Court has significant reservations about allowing the substitution to take place.* Among those reservations are: (1) it is not clear whether decedent's son, Christian Brown, is decedent's only heir at law; (2) it is not clear whether Christian Brown will be able to actually

participate as the legal representative of the estate; (3) it is not clear whether there are any assets other than the 'choice in action' belonging to the estate; (4) if the will is probated, and counsel for Plaintiff becomes the executor, there could be a conflict of interest; (5) it is unclear whether the creditors of the estate are being timely advised of existing or potential assets to satisfy any indebtedness of the estate; and (6) it is unclear whether there exist any other heirs at law who may contest the will. In light of these concerns, although the Court will allow the substitution, the Court will keep a watchful eye on the proceedings, and reserve the right to reverse its decision on substitution should sufficient information surface confirming inequities." (footnote omitted)); *England v. Lorillard, Inc.*, ST-10-CV-631, 2012 V.I. LEXIS 106, at *3-4 (Super. Ct. Jan. 23, 2012) ("The Defendants argue that without being appointed executor of Mr. England's estate, Gerald has no authority to act as a 'personal representative or successor in interest.' The Plaintiff asserts that because a wrongful death claim is a unified claim, it must be brought by the personal representative if only one child wants it. It does not matter whether one of the children disagrees. The Court agrees with the Plaintiff that the Wrongful Death Statute governs a party's right of action, not procedure, and as such does not prevent the Court from substituting Gerald as the Plaintiff at this time. However, there does appear to be a question as to Gerald's ability to bring a wrongful death claim without being appointed executor by the probate division. The Defendants represented that they will not contest Gerald's appointment as executor. As such, in an exercise of caution, the Court will order that the Plaintiff offer Mr. England's will for probate before requiring that Gerald file an amended complaint." (quoting 5 V.I.C. § 78)).[6] Here, for example, Burton-King petitioned for appointment as personal representative to continue Mr. Burton's lawsuit, but after the Burtons had petitioned to settle Mr. Burton's estate without administration. Because the probate court already entered its final adjudication and distributed Mr. Burton's estate, the Burtons might not be able to seek relief from that final order later, should they be unable to agree among themselves on how to

---

[6] Although the opinion in *England* is dated January 23, 2012, the discussion shows that the year had to have been 2013, as *England* references *Brown*, decided in March 2012, which would not have been available if *England* was decided three months earlier. Hence, "2012" was probably a scrivener's error.

distribute whatever damages may be awarded or settlement amounts received from this lawsuit. *Cf. In re Estate of Watson*, SX-91-PB-126, 2015 V.I. LEXIS 151, at *11-15 (Super. Ct. App. Div. Mar. 19, 2015) (reopening estates governed by same law regarding relief from final judgments).

Another concern, which the Personal Representatives offered up in opposition to a personal representative having to be appointed within a formal probate proceeding, is the costs that would be incurred in such proceedings, particularly for persons, such as Mrs. Calixte, who's "life is very hard right now" after the death of her husband. (Calixte Affid. ¶ 6, Ex. B. to Supp. Br.) That is a valid concern, particularly for those persons who do not leave behind a sizeable estate. As the Personal Representatives point out,

> [i]n cases where the survivors have limited means, particularly those where the claims are *de minimis* or involve difficult factual or legal questions, the expense of opening probate would have the practical effect of abating, and perhaps extinguishing, claims upon the demise of the victim, the very harm that Section 77 was intended to prevent. Personal representatives, who are statutorily entitled to bring survival actions, would have to weigh the likelihood of recovery against the cost (in time, money, and effort) of opening a probate. In many instances, this dilemma would result in abandonment of valid claims.
>
> Where the only asset of the estate is a claim where the ultimate recovery may be less than the cost of probate, the claimant would have no choice but to allow the action to die with the decedent. Such a chilling effect upon litigation is not only contrary to the very purpose of Section 77, but also goes against the stated public policy of this Territory. Laws that may have a "chilling effect on the ordinary citizens' willingness to bring a civil dispute to court are disfavored."

(Supp. Br. 21-22 (quoting *Kiwi Constr., LLC v. Pono*, ST-2013-CV-011, 2016 V.I. LEXIS 1, at *8 (Super. Ct. Jan. 15, 2016) (ellipsis omitted)).) Admittedly, it would be disconcerting if probating an estate ultimately consumed all of the assets the estate had.

While courts are sympathetic to the realities and the circumstances of the parties who come before them, courts cannot make decisions based on such sympathies. Moreover, if cost is a concern, then Burton-King should

have sought appointment within Mr. Burton's probate case, rather than file another proceeding and thereby incur more cost. Furthermore, the Personal Representatives overlook that the costs associated with probating an estate can be waived. "Any court in the Virgin Islands may authorize the commencement, prosecution, or defense of *any action or proceeding*, civil or criminal, or appeal therein, without prepayment of fees and costs, or security therefor" so long as the applicant "makes affidavit that he is unable to pay the fees and costs or to give security therefor." 4 V.I.C. § 513(a) (emphasis added). Even the petitioner in a probate proceeding can proceed *in forma pauperis* upon the proper showing. Additionally, courts can "appoint an attorney to represent any person unable to employ counsel." *Id.* § 513(d). Hence, the Personal Representatives' concerns about attorney's fees — as if hiring an attorney were mandatory in probate proceedings — are also not persuasive. (*Cf.* Waldman Affid. ¶ 9 ("Based upon my experience with probate proceedings in St. Croix, the person or entity that petitions to open a probate with administration *will incur* initial costs as follows: Court Filing Fee for Petition $150.00, Newspaper Publication for Notice to Creditors $311.00; *Attorney's Fees* $1,000.00." (emphasis and semi-colons added) (formatting altered), Ex. A to Supp. Br.).)

██ Ultimately, however, the Personal Representatives prevail here because on March 31, 2017, the Supreme Court of the Virgin Islands promulgated Rule 17(e) of the Virgin Islands Rules of Civil Procedure. Rule 17(e) provides:

> In wrongful death suits filed under 5 V.I.C. § 76 and in survival actions filed under 5 V.I.C. § 77, the action may be prosecuted in the name of a plaintiff identified in the complaint as acting as a personal representative. The named plaintiff shall serve as personal representative throughout the proceeding unless replaced by order of the court.

The Reporter's Note[7] to Rule 17 further explains:

> To avoid any *unnecessary requirement to open an estate*, and to permit swift commencement of proceedings where required for statute of

---

[7] Although referred throughout the rules as "Advisory Committee on Rules comment," the Supreme Court of the Virgin Islands has since rechristened the comments as the "Reporter's Note." *See Mills-Williams v. Mapp*, 67 V.I. 574, 585-586, n.6 (V.I. 2017).

limitations or other purposes, this subpart of the rule provides that an action may be prosecuted in the name of a plaintiff who is identified in the complaint as acting as a personal representative, although court appointment to that position has not at that time been made. The named plaintiff will serve as personal representative throughout the proceeding unless replaced by order of the court.

*Id.* (Rptr.'s Note) (emphasis added).

 Recently, the Supreme Court of the Virgin Islands held that it "does not abandon its collective knowledge when it exercises its rulemaking authority, and surely it would not knowingly promulgate any rule it regarded as invalid." *Mills-Williams v. Mapp*, 67 V.I. 574, 586 n.6 (V.I. 2017) (quotation marks, ellipsis, brackets, and citation omitted). There, the question concerned whether, after the adoption of the Virgin Islands Rules of Civil Procedure, complaints, tested by motions to dismiss for failure to state a claim, were subject to the more stringent plausibility standard as adopted by the Supreme Court of the Virgin Islands in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and followed by the Supreme Court of the Virgin Islands in *Joseph v. Bureau of Corrections*, 54 V.I. 644 (V.I. 2011), or the more liberal notice pleading standard, also adopted by the Supreme Court of the United States in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), but set aside by *Twombly. See* 550 U.S. at 563. After promulgating Virgin Islands Rule of Civil Procedure 8, which includes the following Reporter's Note:

> Language has been included in Rule 8(a) to note that practice in the Virgin Islands continues to adhere to the traditional "notice" pleading ethos as many states and territories have chosen to do, applying an approach that declines to enter dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief.

V.I. R. Civ. P. 8 (Rptr.'s Note). In *Mills-Williams*, the Virgin Islands Supreme Court answered whether the Reporter's Note has the status of law, explaining that it

> was certainly aware of its prior precedents applying the plausibility standard, yet nevertheless chose to adopt a rule of civil procedure that

518

expressly and unambiguously eliminated the plausibility standard, any precedents of this Court construing the former rule must prospectively yield to the plain language of the new rule to the extent the new rule differs from the old rule.

*Mills-Williams*, 67 V.I. at 586 n.6. *See also id.* at 585 ("Virgin Islands Rule of Civil Procedure 8 expressly states that the Virgin Islands is a notice pleading jurisdiction, and the Reporter's Note *eliminates any doubt* that this language is calculated to apply an approach that *declines* to enter dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief. Therefore, going forward, it is clear that the adoption of Rule 8 of the Virgin Islands Rules of Civil Procedure supersedes our prior precedents which imposed the *Twombly* plausibility standard by virtue of the now-amended Superior Court Rule 7, and restores the notice pleading regime that had previously been in effect." (quotation marks, brackets, citations, and footnote omitted) (first emphasis added)).

In this instance, there is no prior precedent from the Virgin Islands Supreme Court concerning the appointment of personal representatives to commence or continue survival actions or to commence wrongful death actions because the issue has not been raised on appeal yet. But members of the Virgin Islands Bar did raise concerns to the Supreme Court when the Virgin Islands Rules of Civil Procedure were opened for comment.[8] The Virgin Islands Supreme Court was aware of these comments. Presumably, like *Mills-Williams*, the Court nevertheless chose to adopt a rule of civil procedure that expressly and unambiguously eliminated the requirement to open an estate as a prerequisite for bringing or maintaining a wrongful death claim or a survival claim. Whatever concerns this Court may have had are now moot. *Cf. Der Weer*, 60 V.I. 91, 98-99 (Super. Ct. 2014) ("A motion becomes moot when something occurs after a motion is filed that resolves the issues raised in that motion.").

---

[8] *See* Dudley Topper and Feuerzeig, LLP, *Comments on the Virgin Islands Rules of Civil Procedures* 5-7, Ex. 1, & Ex. 3 (Mar. 8, 2017), *In re Amendments to V.I. R. Civ. P.*, S. Ct. Prom. No. 2007-001 (citing and discussing *Brown*, 2012 V.I. LEXIS 107 (copy attached as exhibit 1), and *England*, 2012 V.I. LEXIS 106 (copy attached as exhibit 3)).

### (2) Motions for Leave to Substitute

Turning to the motion for leave to substitute, notwithstanding the concerns raised above, the Court will grant each motion.[9] The Personal Representatives sought leave to substitute within two years after the date of each respective plaintiff's death. *See* 5 V.I.C. § 78 ("In case of the death or disability of a party, the court may at any time within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest."). The requests were also made on motion, served on Defendants. Defendants did not object to any of the motions when they were filed, nor voiced a concern after the rules changed. Accordingly, the Court will grant each motion by separate order.

 The Court will also construe each motion for leave to amend as including a request for permission to substitute. "Only the parties to a case may file documents and make requests of the court in that case." *Alumina Dust Claims*, 67 V.I. at 188 (collecting cases). The Personal Representatives are not parties to any of these cases. Technically, they did not ask to be made parties. Instead, they filed motions to amend complaints that they, themselves, never filed. That is improper. However, Defendants did not object. Moreover, the Personal Representatives' intent was clearly to substitute into these cases. Rather than elevate form over function here, the Court will construe each motion to amend as a motion for leave to substitute.

 However, the Court cannot allow the proposed amended complaints the Personal Representatives submitted. Each proposed complaint is captioned "survival and/or wrongful death complaint." (Proposed Amend. Compl., Ex. B, Amend. Mot. for Leave to File Amend.

---

[9] After these motions were filed, the Supreme Court of the Virgin Islands promulgated Virgin Islands Rule of Civil Procedure 25(a), which provides procedural steps for substituting a personal representative following the death of a party. Pursuant to Rule 1-1, the new rules govern in all civil actions pending as of March 31, 2017, the date the Virgin Islands Rules of Civil Procedure took effect unless the judge "makes an express finding that applying" the new rules "in a particular previously-pending action would be infeasible or would work an injustice." V.I. R. Civ. P. 1-1(c)(2)(B). Because these motions were filed before Rule 25(a) was promulgated, the Court applies the procedure in effect at the time, section 78 of title 5 of the Virgin Islands Code. *Accord Edwards*, 2017 V.I. LEXIS 94, at *5 n.3 ("[R]ather than reaching back in time, Rule 1-1 must require that the rules in effect prior to March 31, 2017 continue to govern motions pending as of that date, but for all motions filed after March 31, 2017, the new rules will apply unless application to the case (not a particular motion) would be unjust or infeasible." (citing *Webster v. FirstBank P.R.*, 66 V.I. 514, 519 n.3 (V.I. 2017)).

Compl., *Augustin v. Hess Oil V.I. Corp.*, SX-13-CV-427, filed June 7, 2017.) Pleading claims in the alternative is permissible. *Cf.* V.I. R. CIV. P. 8(a)(3); *accord Mitchell*, 67 V.I. at 286 n.7 ("[A] plaintiff may plead different, even inconsistent, claims in the alternative, and also pursue alternate theories of relief."). But survival action is not an alternative claim to a wrongful death action.

When Plaintiffs filed their amended complaints, *cf. Asbestos, Catalyst & Silica*, 67 V.I. 544 (rejecting master complaint and ordering each plaintiff to refile individually), they each asserted the same two claims: premises liability/gross negligence (count one) and supplying a chattel dangerous for its intended use (count two). The proposed second amended complaints the Personal Representatives attached to their motions add the word "survival" after count one and count two and further add a third count titled: "SURVIVAL and/or WRONGFUL DEATH UNDER 5 VIC 76 and 77." (Proposed Amend. Compl. 5.) In their supplemental brief, the Personal Representatives offer the following explanation:

> Recognizing that the wrongful death claim requires proof of causation that the lung injury was a substantial contributing cause of the death, plaintiffs have pled wrongful death "and/or" survival claims. Plaintiffs have not used the terms "and/or" to indicate that the claims are mutually exclusive . . . but rather to make clear that they still intend to present survival claims in the event they do not prevail on the question of substantially related causation of death.

(Supp. Br. 6 n.5.) This is a misunderstanding of the law.

A wrongful death claim is not a fallback in the event a survival claim fails. Rather, a wrongful death claim is an entirely separate and independent claim. Again, while a personal representative prosecutes both actions, survival claims and wrongful death claims are not alternative claims for relief. "Wrongful death is a new claim — with its own elements that must be alleged in a complaint and proven at trial — whereas a survival claim is not really a claim. It is merely a vehicle for pursuing someone else's claims." *Der Weer*, 64 V.I. at 138 (quotation marks, brackets, and citation omitted). By survival claim or survival action, all that is meant is that the claim survives the death of the party.

Understandably, the two terms get conflated because people hear survival and think survivors. But the survivors' claim is for wrongful

death. The survival claim, or survival action, is what the decedent brought or could have brought. If Mr. Augustin or Mr. Redo, for example, had sued someone for trespass or for conversion before they died, then Charissa or Mrs. Redo could continue those claims as the personal representative. In these cases, the survival claims are counts one and two — the claims these men asserted against Hess and HOVIC before they died. Count three can be a wrongful death claim. But it must be plead as such. Since Hess and HOVIC did not object, the Court will grant the Personal Representatives leave to amend to plead a third count as a wrongful death claim, should they so choose.

## III. CONCLUSION

For the reasons stated above, the Court will grant the motion for leave to exceed the page limits, notwithstanding that the motion was filed the same day as the brief and not before. The Court will also construe each motion for leave to file an amended complaint as including a request for permission to substitute a personal representative on behalf of the named plaintiffs and grant the substitutions, notwithstanding the concerns raised in these cases regarding the appointment of a personal representative through a formal probate proceeding. The law has changed since these concerns were first raised. The Court will order the captions amended to reflect that a personal representative on behalf of an estate and possibly the survivors of the deceased is prosecuting each case. The Court will also grant the Personal Representatives leave to supplement the complaints to state claims for wrongful death if appropriate. However, the proposed amended/supplemental complaints submitted in conjunction with the Personal Representatives' motions must be rejected.

An appropriate order follows in each case.